OPINION OF THE COURT
Eugene E. Peckham, S.
This is the first case involving the new optional unitrust authorized by the Legislature effective January 1, 2002. The petitioner, Helen J. Ives, requests permission for the trust under paragraph Third of the will of Edward J. Ives to be converted to a unitrust pursuant to EPTL 11-2.4 (e) (2). In a unitrust the payout to the income beneficiary is a fixed percentage of the fair market value of the trust as revalued each year. For the reasons set forth in this decision, HSBC Bank USA, as trustee, is directed that EPTL 11-2.4 (unitrust) shall apply to said trust effective as of January 1, 2002.
Helen J. Ives, age 95, is the income beneficiary of the trust and the widow of the testator, Edward J. Ives, who died January 15, 1998. Mr. and Mrs. Ives had no children. The remainder of the trust is divided into 14 shares for persons who are all relatives of Mrs. Ives, her nieces, nephews, grandnieces and grandnephews.
EPTL 11-2.4 (e) (2) (B) provides: “At any time, the court having jurisdiction of a trust to which this section otherwise would *481 not apply, upon the petition of the trustee or any beneficiary of the trust and upon notice to all persons interested in the trust, may direct that this section apply to the trust * * * .” Citation was issued to the trustee and all of the remaindermen of the trust and proofs of service upon them have been filed. On the return day of the citation only the petitioner and the trustee Bank appeared. The trustee did not oppose the relief requested.
EPTL 11-2.4 (e) (5) (B) provides that “In any proceeding brought pursuant to subparagraph (e)(2), there shall be a rebuttable presumption that this section should apply to the trust.” “A presumption has been defined as a rule of law ‘which requires that a particular inference must be drawn from an ascertained state of facts’ ” (Prince, Richardson on Evidence § 3-101, at 53 [Farell 11th ed rev]).
The presumption favoring unitrust is analogous to the presumption in section 675 of the Banking Law favoring the right of survivorship in joint accounts. Under that provision of the Banking Law, the making of a deposit in a joint account established in proper form is prima facie evidence of the depositor’s intent for the account to be one with right of survivorship. The death of one depositor vests the entire balance of the account in the surviving joint owner of the account. However, the presumption of survivorship can be rebutted by clear and convincing evidence to the contrary that a joint account with right of survivorship was not intended. (Matter of Coddington, 56 AD2d 697 [3d Dept 1977].)
Similarly, as provided in the statute, the presumption in favor of unitrust may be rebutted by substantial evidence to the contrary. In the present case, there is no such rebuttal evidence since no one appeared in opposition on the return day.
But the matter does not end there since the statute says the court “may direct” that unitrust apply. (EPTL 11-2.4 [e] [2] [A].) It then goes on to list five factors for the court to consider in making its determination. (EPTL 11-2.4 [e] [5] [A].) Thus the statute clearly leaves to the judgment and discretion of the surrogate the decision as to whether or not to grant the petition for conversion to a unitrust.
The factors that shall be considered by the court include:
“(i) the nature, purpose, and expected duration of the trust;
“(ii) the intent of the creator of the trust;
“(iii) the identity and circumstances of the beneficiaries;
*482 “(iv) the needs for liquidity, regularity of payment, and preservation and appreciation of capital;
“(v) the assets held in the trust; the extent to which they consist of financial assets, interests in closely held enterprises, tangible and intangible personal property, or real property; the extent to which an asset is used by a beneficiary; and whether an asset was purchased by the trustee or received from the creator of the trust.” (EPTL 11-2.4 [e] [5] [A].)
The petitioner in the present matter has submitted affidavits regarding these factors from herself, one of the remaindermen of the trust, and the attorney who drafted the will. The affidavit of Frederick P. Conte, Esq., the attorney-draftsman of the will, states that the testator’s “primary intent under his will was to provide for his wife.”
Further, his affidavit says: “The trust was created rather than an outright bequest to minimize estate taxes by making full use of the unified credit available to the decedent under the Internal Revenue Code while providing for the decedent’s wife. The balance of the estate was left to Helen J. Ives outright.”
It is clear from a reading of the will and the affidavit of the attorney-draftsman that the testator’s primary intent was to bepefit his wife. The trust is a credit shelter trust created to save taxes. The trustee of the trust is given a power of invasion “for her support and maintenance in the standard of living to which she is accustomed.” Benefit to the 14 remaindermen was secondary in the testator’s mind to providing for his wife for the rest of her life.
Further, the affidavit of Preston Baisley, nephew of Mrs. Ives, and one of the remaindermen, states:
“None of the remaindermen are on welfare or otherwise receiving social services and none of them are financially impoverished. All of the remaindermen are either currently working, or are voluntarily staying at home while their spouse is working, or have retired. Modification of the Trust as requested in the Petition will therefore not adversely affect the current standard of living of any of the remaindermen.”
Attached to the affidavit of Mrs. Ives is her income and expense budget which indicates that her income is insufficient to provide for her current living expenses and medical costs. Attached to the petition as exhibit B is a chart showing Mrs. *483 Ives’ net income from the trust has ranged between a 2% and 3% return on trust principal. Adopting unitrust would increase the payout to the 4% specified in the statute. (EPTL 11-2.4 [b] [1].) The difference would be an invasion of principal, which would be consistent with the provision of the will authorizing such an invasion to maintain Mrs. Ives’ standard of living. Since the trust is invested entirely in marketable securities, including stocks, bonds and money market funds, such an additional payment for Mrs. Ives’ benefit could easily be accomplished.
Having considered the facts presented relative to the factors, the statutory presumption in favor of unitrust and the lack of opposition to the petition, it is clear the petition should be granted. HSBC Bank USA, as trustee, is hereby ordered to treat the trust under paragraph Third of the will of Edward J. Ives as a unitrust pursuant to EPTL 11-2.4.
The petition also requests that the unitrust designation be retroactive to January 1, 2002, the effective date of the statute and the first day of the trust’s fiscal and tax year. EPTL 11-2.4 (e) (4) (A) provides that the unitrust section “shall apply to a trust with respect to which there is * * * a court decision * * * as of the first year of the trust in which assets first become subject to the trust, unless * * * the court in its decision provides otherwise * * * .” The draftspersons of this statute have stated that this means that a “court order to have EPTL 11-2.4 apply can be made effective prospectively * * * .” (Sherwood & Hirschson, Changes in the New York Definition of Trust Accounting Principal and Income, at 100 [2002].) Prospective application would seem logical for a new trust that is just being funded and opting into unitrust. But must a uni-trust election also apply prospectively to an existing trust?
EPTL 11-2.4 (d) (1) provides that the current beneficiary’s interest in the unitrust amount begins “on the date specified by the court.” As already noted, EPTL 11-2.4 (e) (4) (A) states that unitrust applies when “the court in its decision provides.” It seems clear from these provisions of the statute that when a court decision is required to approve the unitrust conversion the effective date is decided by the court.
There is nothing in the statute that prohibits retroactive application, at least to the first of the year in which the petition is granted, which is what is requested in the petition of Mrs. Ives. Going back beyond that would create serious problems of recalculating payout and also recalculating income taxes of both the trust and the income beneficiary. No such *484 problems of recalculation occur when the change is retroactive only to the first day of the current year. Actually, it should be easier to have unitrust apply for the whole year from January 1 since that would avoid the trust having two part years, with part of the year’s income for the beneficiary being calculated based upon the net income earned by the trust and the other part of the year based upon the 4% payout for unitrust. Accordingly, it is held that the trustee shall treat the Ives Trust as a unitrust effective January 1, 2002.
A final problem is whether or not the three-year smoothing rule in EPTL 11-2.4 (b) (2) applies when an existing trust converts to unitrust, and if it does, when it applies.
EPTL 11-2.4 (b) (2) provides:
“Commencing with the fourth year of a trust, the ‘unitrust amount’ for a current valuation year of the trust shall mean an amount equal to four percent multiplied by a fraction, the numerator of which shall be the sum of (A) the net fair market values of the assets held in the trust on the first . business day of the current valuation year and (B) the net fair market values of the assets held in the trust on the first business day of each prior valuation year, and the denominator of which shall be three.”
A prior valuation year is “the two years of the trust immediately preceding the current valuation year.” (EPTL 11-2.4 [c] [3].) So for the Ives Trust it would be possible to determine the fair market value of the trust assets on the first business day of 2000, 2001, and 2002, divide by 3 and multiply by 4% as provided in EPTL 11-2.4 (b) (2). By making such calculation, the smoothing rule could be applied immediately.
The problem with such an interpretation is that the optional unitrust statute was not in existence prior to January 1, 2002. Another part of the same act of the Legislature, EPTL ll-A-6.4, regarding the revised Principal and Income Act specifically provides that “this article,” referring to article 11-A, applies to receipts and expenses of a trust “established * * * before or after its effective date.” There is no similar provision for EPTL 11-2.4 which is in article 11, not 11-A. Thus the effective date for EPTL 11-2.4 is January 1, 2002, and it does not apply to trusts established “before” its effective date.
Furthermore, a principal purpose of the Prudent Investor Act and the optional unitrust is to encourage payout to the income beneficiary based upon the total return of the trust. It *485 is unfair to both the income and remainder beneficiaries of the trust to compute payout on investment standards that were not in effect at the time the investments were made, namely the two years prior to January 1, 2002. It is equally unfair to base any standard of trustee performance upon laws that were not in effect at the time of the trustee’s actions.
As a result, it is held that the smoothing rule of EPTL 11-2.4 (b) (2) does not apply immediately to a trust in existence on January 1, 2002 that converts to unitrust. In effect, the trust shall be treated as a new trust opting into unitrust as of January 1, 2002.
This holding does not reach the question of whether the smoothing rule should apply immediately to an existing trust that opts into unitrust several years from now. At that point, the effective date of the statute would not be a bar to retroactive application of the smoothing rule and the trustee should have been investing for total return in accordance with the Prudent Investor Act and the revised Principal and Income Act.
So when does the smoothing rule begin to apply to the Ives Trust? EPTL 11-2.4 (b) (2) provides that the smoothing rule commences with the fourth year of a trust. As pointed out above, the smoothing rule is actually a three-year average consisting of the current year and two prior years. (EPTL 11-2.4 [c] [2], [3].) Obviously, there is a conflict between these two provisions. Does the smoothing rule first apply in 2004 (three years) or 2005 (four years)?
The rules for statutory construction tell us that “[t]he primary consideration of the courts in the construction of the statutes is to ascertain and give effect to the intention of the Legislation.” (McKinney’s Cons Laws of NY, Book 1, Statutes § 92.) Further, “[i]t is the duty of the court to harmonize conflicting provisions of a statute if possible, but if there is an irreconcilable conflict, the court must preserve the paramount intention * * * .” (Statutes § 98 [b].)
In determining the intention of the Legislature, the court may look to the legislative history of the statute as embodied in reports and recommendations leading to enactment. (Statutes § 125 [b].) EPTL 11-2.4 was enacted as a result of the Fifth Report of the EPTL-SCPA Legislative Advisory Committee. That report states in regard to the smoothing rule “A unitrust amount could cause a fluctuating return in volatile times. However * * * using an average of market values * * * can significantly reduce fluctuation in annual payout.” (14 War *486 ren’s Heaton, Surrogates’ Courts Appendix 5.02, at 5-15 [6th ed rev].) Since the paramount intention of the smoothing rule is to reduce fluctuation in the unitrust payout it would seem that the sooner the three-year average can be applied, the better. According to this logic, the rule should first apply in 2004 with the average being determined from the net fair market values of the trust assets on the first business days of 2002, 2003 and 2004.
This conclusion is buttressed by the Advisory Committee’s explanation of the original reason why the rule would not apply until the fourth year. The Fifth Report originally would have made the unitrust a default rule applicable to estates and trusts. The purpose of the fourth year in that original proposal was to avoid the problems of calculating the unitrust amount during the period of estate administration, when the size of the estate can fluctuate greatly due to additional receipts and payments of taxes and expenses. (14 Warren’s Heaton, Surrogates’ Courts Appendix 5.02, at 5-17 [6th ed rev].) However, the Advisory Committee modified its original proposal in response to concerns expressed by various groups and commentators so that the unitrust became an optional provision applicable to trusts only. (Sherwood & Hirschson, supra at 4, 116-118.) Since unitrust no longer applies during estate administration, there is no problem and no reason to wait for four years to avoid the complications of calculating the smoothing rule during the period of estate administration. The paramount intention of the Legislature is to smooth out the unitrust amount by use of the three-year average calculation as soon as possible.
Therefore, it is held that the smoothing rule of EPTL 11-2.4 (b) (2) shall first be applied by the trustee of the Ives Trust to compute the unitrust amount for the year 2004.