[777 NYS2d 37]

ANDREA SALAMONE et al., Plaintiffs, v WINCAF PROPERTIES, INC., Defendant and Third-Party Plaintiff-Appellant. JOSEPH RUSSO et al., Third-Party Defendants-Respondents, et al., Third-Party Defendants. (And Another Action.)

First Department, April 29, 2004

### APPEARANCES OF COUNSEL

*Barry, McTiernan & Moore (Roger P. McTiernan* and *Anthony J. McNulty* of counsel), for appellant.

*Molod, Spitz, DeSantis & Stark, P.C. (Marcy Sonneborn* and *Linda A. Stark* of counsel), for respondents.

### OPINION OF THE COURT

FRIEDMAN, J.

Under the common-law rule of joint and several liability, where the acts of several tortfeasors coincide to cause injury to a plaintiff, any one of those tortfeasors may be held liable for the entire amount of damages, no matter how small that tortfeasor's proportionate share of the fault (*see Sommer v Federal Signal Corp.,* 79 NY2d 540, 556 [1992]). In 1986, the Legislature, acting out of a concern to "remedy the inequities created by joint and several liability on low-fault, 'deep pocket' defendants" (*Rangolan v County of Nassau,* 96 NY2d 42, 46 [2001]), restricted the applicability of joint and several liability in personal injury actions by enacting article 16 of the CPLR (L 1986, ch 682, § 6; amended L 1996, ch 635, §§ 5-8).

Under CPLR 1601 (1), a defendant bearing 50% or less of fault for a plaintiff's personal injury is liable for noneconomic damages only to the extent of that defendant's proportionate share of fault. The applicability of this rule is, however, subject to the exceptions and limitations set forth in CPLR 1602, a statute that has been said to possess "the elegance and clarity of the Internal Revenue Code" (McLaughlin, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C1602:1, 1997 Pocket Part, at 237 [1976 ed]). In recent years, the Court of Appeals has resolved certain recurrent difficulties in applying CPLR 1602 (*see Chianese v Meier,* 98 NY2d 270 [2002] [construing the exception for "actions requiring proof of intent" under CPLR 1602 (5)]; *Rangolan v County of Nassau, supra* [construing the savings provision for "any liability arising by reason of a nondelegable duty or by reason of the doctrine of respondeat

superior" under CPLR 1602 (2) (iv)]; *Faragiano v Town of Concord*, 96 NY2d 776 [2001] [addressing same issue as *Rangolan*]). As described below, this appeal presents yet another problem in the construction of this complex statute.

In the present case, the owner of a construction site, although not directly at fault for plaintiff laborer's injuries, has been held vicariously liable for all of plaintiff's damages, including millions of dollars for noneconomic loss, pursuant to Labor Law § 240 (1). It is clear that the owner, notwithstanding its complete lack of fault, was not entitled to invoke CPLR article 16 as a partial defense to plaintiff's claim because, among other reasons, article 16's limitations on a defendant's liability do "not apply to any person held liable by reason of the applicability of article ten of the [L]abor [L]aw" (CPLR 1602 [8]). The question presented by this appeal is whether the protection of CPLR article 16, although unavailable to the faultless, vicariously liable owner vis-à-vis plaintiff, limits the extent to which that owner may obtain common-law indemnification from a contractor that is actually at fault, but whose proportionate share of the fault is less than 50%. For the reasons discussed below, we conclude that, pursuant to its savings provision for indemnification claims (CPLR 1602 [2] [ii]), CPLR article 16 does not limit the owner's right of indemnification against such a contractor.

*Factual Background*

On September 24, 1992, plaintiff Andrea Salamone suffered devastating injuries when he fell through an unfinished roof while working on a construction project as an employee of third-party defendant Bronte Construction (Bronte). In or about March 1993, plaintiff (and his wife, derivatively) commenced this personal injury action in Supreme Court, Bronx County, against defendant and third-party plaintiff Wincaf Properties, Inc. (Wincaf), the owner of the construction site. Plaintiff sued Wincaf under Labor Law § 240 (1), among other theories. Wincaf, in turn, commenced a third-party action for contribution or indemnification against Bronte and T.O.M.I. Construction, Inc. (TOMI), another contractor that had worked on the project.

The action was tried before a jury in 1995. The jury allocated responsibility for plaintiff's injuries 45% to Wincaf, 15% to Bronte, and 40% to TOMI, and awarded plaintiff, inter alia, $150,000 for past pain and suffering and $920,000 for future pain and suffering. On the parties' posttrial motions, the trial court, by order entered April 15, 1996, vacated the awards for past and future pain and suffering and ordered a new trial as to

such damages, unless the parties stipulated to increase those awards to $500,000 and $1,800,000, respectively. The same order also granted Wincaf a directed verdict on its claim for common-law indemnification against Bronte and TOMI, but denied Wincaf's motion insofar as it sought to set aside the verdict finding it 45% at fault for the accident.

On appeal from the posttrial order, this Court, by order dated April 23, 1998, affirmed as to the damages and indemnification issues, but modified:

"to the extent of granting Wincaf's motion to set aside the verdict insofar as to vacate the jury's apportionment of fault and to substitute therefor the finding that Wincaf's liability pursuant to Labor Law § 240 (1) is vicarious only, and to remand the matter for a new trial for the sole purpose of reapportioning liability among the defendants other than Wincaf" (249 AD2d 169, 169-170 [1998]).

In the body of our decision, we explained that Wincaf was entitled to indemnification from Bronte and TOMI as a matter of law because "Wincaf's liability for plaintiff's damages was solely statutory, pursuant to Labor Law § 240 (1); there was no evidence that Wincaf directed or controlled the work performed by its subcontractors" (249 AD2d at 170). We further explained that the jury's allocation of fault to Wincaf could not stand, and a new trial was necessary to reapportion fault between Bronte and TOMI, because "Wincaf cannot have been at once entitled to common-law indemnification and, as the jury found, 45% responsible for plaintiff's injury" (id.).

On June 30, 1998, after the case was remanded to the trial court, plaintiffs and Wincaf stipulated, on the record, to entry of judgment in favor of plaintiffs against Wincaf in accordance with the trial court's posttrial order, as affirmed by this Court; in the following amounts: $500,000 for past pain and suffering; $1,800,000 for future pain and suffering; $200,000 for future lost earnings; and $50,000 for loss of consortium. The stipulation further provided that plaintiffs and Wincaf were agreeing to entry of judgment on the cause of action under Labor Law § 240. The stipulation, to which Bronte was not a party, made no reference to structuring of the judgment pursuant to CPLR article 50-B.

Wincaf subsequently served a notice of settlement of a proposed judgment granting plaintiffs recovery against Wincaf of the amounts provided by the stipulation (plus postverdict

interest, costs, and disbursements), and further granting Wincaf judgment "based upon complete common law indemnity" against the third-party defendants, Bronte and TOMI. The judgment submitted by Wincaf, which did not include any provision for structuring, was entered by the Clerk on October 13, 1998. There is no indication that Bronte served any proposed counter-judgment, pursuant to 22 NYCRR 202.48 (c) (2), in response to Wincaf's notice of settlement.

At some point after the judgment was entered, Wincaf moved to resettle the judgment to provide for structuring pursuant to CPLR article 50-B. In response, Bronte cross-moved to modify the portion of the judgment granting Wincaf indemnification based on the limitations of CPLR article 16. Bronte contended that, because its equitable share of fault for the accident was less than 50%, CPLR article 16 limited Wincaf's ability to obtain indemnification from Bronte to Bronte's equitable share of fault. Bronte's cross motion also sought to eliminate Wincaf's right to be indemnified both for the additur to the damages to which Wincaf (but not Bronte) had stipulated, and for the increase in the present value of the judgment due to the failure to structure it in accordance with CPLR article 50-B.

The motion and cross motion for resettlement of the judgment were submitted on January 8, 1999, and disposed of by order dated February 23, 1999, and entered April 2, 1999 (the 1999 order). Wincaf's motion for resettlement to provide for structuring was denied on the ground that Wincaf had "waived its right to apply Article 50-B." The branch of Bronte's cross motion seeking to limit Wincaf's right to indemnification pursuant to CPLR article 16 was denied based on CPLR 1602 (2) (ii), which provides, in pertinent part, that the limitations of article 16 shall "not be construed to impair, alter, limit, modify, enlarge, abrogate or restrict . . . any . . . right of indemnification available to or conferred upon any defendant for any negligent or wrongful act or omission." The court construed this statutory language to mean that CPLR article 16 did not limit the indemnification available to Wincaf. With regard to the branch of Bronte's cross motion dealing with Wincaf's right to indemnification for the additur and for the increased value of the judgment due to nonstructuring, the court, somewhat cryptically, granted such relief "only to the extent of requiring that all parties who entered into the subject stipulation be bound by it and the judgment of October 13, 1998."

For about two years after the 1999 order disposed of the first set of motions seeking to resettle the judgment, Wincaf, Bronte,

and TOMI pursued negotiations to agree on an allocation of fault for the accident in order to avoid the necessity of a new trial on that issue. Finally, on April 25, 2001, these parties stipulated, on the record, that 78.25% of fault would be allocated to TOMI, and 21.75% of fault would be allocated to Bronte. Bronte's counsel made clear that, although Bronte was agreeing to this allocation of fault, it adhered to its position that it was not obligated to completely indemnify Wincaf, based both on CPLR article 16 and on Wincaf's allegedly unilateral stipulation to the additur and to the lack of structuring.

The record reflects that Wincaf has satisfied the total amount of plaintiffs' judgment against it, which, with interest, amounted to approximately $3,300,000. TOMI, whose stipulated share of fault for the accident is 78.25%, is now defunct, and has exhausted its insurance coverage through payment to Wincaf of approximately $1,400,000 in partial satisfaction of Wincaf's judgment for indemnification. Wincaf remains uncompensated for approximately $1,900,000 of the damages and interest it has paid plaintiffs. More than 90% of this amount represents damages for noneconomic loss under CPLR article 16 and accrued interest thereon, since more than 90% of the principal amount of $2,550,000 awarded by the judgment (all but the $200,000 lost earnings award) compensated plaintiffs for items constituting noneconomic loss as defined by CPLR 1600.

In October 2001, Bronte moved for renewal of its prior cross motion to resettle the judgment, which had been denied by the 1999 order. The basis for the renewal motion was an alleged "change in the law regarding the application of Article 16 to this case" (see CPLR 2221 [e] [2]) that, Bronte argued, had been effected by the Court of Appeals' March 2001 decision in *Rangolan v County of Nassau* (*supra*). As more fully discussed below, Bronte contended that, under *Rangolan*, CPLR 1602 (2) (ii) could no longer be construed (as it had been in the 1999 order) to render the limitations of CPLR article 16 inapplicable to Wincaf's right of indemnification against Bronte.

In opposition to Bronte's motion, Wincaf argued, inter alia, that the *Rangolan* decision did not change the law, and left Wincaf's entitlement to indemnification unaffected by CPLR article 16. Wincaf contended that CPLR 1602 (2) (ii) specifically preserved Wincaf's common-law "right of indemnification" against Bronte from being "impair[ed], alter[ed], limit[ed], modif[ied], enlarge[d], abrogate[d] or restrict[ed]" by CPLR article 16. Wincaf further contended that CPLR 1602 (8), which

deprived "any person held liable by reason of the applicability of article ten of the labor law" of the protection of CPLR article 16, should be construed to apply to the indemnification claim against Bronte just as it did to the direct Labor Law § 240 (1) claim against Wincaf. Wincaf also argued that Bronte's motion was precluded on certain procedural grounds.

*Decision of the IAS Court*

In a writing dated February 27, 2002, the IAS court decided to grant Bronte's motion for renewal of its prior motion to resettle the judgment, and, upon such renewal, to limit Wincaf's right to indemnification from Bronte in accordance with CPLR article 16. Stated otherwise, the court ruled that, pursuant to CPLR 1601 (1), Wincaf was entitled to indemnification from Bronte for the noneconomic portion of plaintiffs' damages only to the extent of Bronte's 21.75% equitable share of the liability. Essentially, the court accepted Bronte's argument that the Court of Appeals' *Rangolan* decision constituted a change in the law, and established that CPLR 1602 (2) (ii) no longer rendered the limitations of CPLR article 16 inapplicable to a party's liability on a claim for indemnification. This position was contrary to the view the court had taken in its 1999 order. The court also concluded that CPLR 1602 (8) did not preclude application of article 16 limitations to Bronte's liability to indemnify a party held liable to the plaintiff under Labor Law § 240 (1). The court did not address Wincaf's arguments that the motion was procedurally precluded.

The February 2002 decision was not itself an appealable order, but directed that an order be settled. After some delay, the decision was ultimately incorporated by reference, in pertinent part, in an appealable order dated May 7, 2003, and entered May 12, 2003. The instant appeal has been taken by Wincaf from the order of May 2003.

*Analysis*

█ Before turning to the CPLR article 16 issue presented by this appeal, we note that this substantive issue was inappropriately raised for the first time by Bronte, and inappropriately considered for the first time by the IAS court, on a motion to resettle a judgment that had already been entered in Wincaf's favor. CPLR 5019 (a), which provides authority for the correction of a "mistake, defect or irregularity" in a judgment, does not authorize resettlement to amend an aspect of a judgment that affects a substantial right of a party. Rather, consideration of an alleged substantive error in a judgment,

other than one clearly inconsistent with the intentions of the court and the parties as demonstrated by the record (see *Kiker v Nassau County*, 85 NY2d 879, 881 [1995]), should be obtained either through an appeal from that judgment, or, if grounds for vacatur exist (they are absent here), through a motion to vacate pursuant to CPLR 5015 (a) (see *Herpe v Herpe*, 225 NY 323, 327 [1919]; *Garrick Aug Assoc. Store Leasing v Scali*, 278 AD2d 23, 23 [2000]; Siegel, NY Prac § 420, at 683-684 [3d ed]; Weinstein-Korn-Miller, NY Civ Prac ¶ 5019.04).[1]

Notwithstanding the foregoing, we deem it advisable to address the substantive issue briefed by the parties on this appeal, which arises from litigation that has been in progress for more than a decade. Contrary to Wincaf's contention, the substantive CPLR article 16 issue raised on this appeal was not a subject of the prior appeal in this matter (see 249 AD2d 169 [1998]). Moreover, Wincaf does not specifically argue, so far as we can tell, that the IAS court lacked authority to amend the judgment, once it had been entered, to correct an alleged legal error substantially affecting the parties' rights. In this regard, we note that Wincaf has not cited CPLR 5019 (a) or any of the case law explaining the limits of the authority granted by that statute. Indeed, an argument relying on such authority would have been inconsistent with Wincaf's own course of action, since Wincaf itself started the postjudgment motion practice by moving (albeit unsuccessfully) to resettle the judgment to provide for structuring pursuant to CPLR article 50-B, another substantive issue raised for the first time after judgment had been entered. Therefore, in deference to the course charted by the parties themselves, we proceed to consider the merits of the CPLR article 16 issue. We note that our consideration of this substantive issue on the merits leads us to the same result—reversal of the order appealed from, and reinstatement of the prior judgment—that we would have reached had we decided this appeal on procedural grounds alone.

██ We begin by reviewing clause (ii) of CPLR 1602 (2), on which the IAS court relied in its original refusal, in the 1999 order, to apply the limitations of CPLR 1601 (1) to Bronte's indemnification liability to Wincaf. As relevant to our analysis, CPLR 1602 (2) provides:

---

1. Since Bronte's original, unsuccessful cross motion to resettle the judgment was inappropriate, the subsequent, successful motion for renewal of the resettlement motion was, perforce, also inappropriate, whether or not the requirements for renewal under CPLR 2221 were satisfied.

"The limitations set forth in this article shall: . . .

"2. *not be construed to impair, alter, limit, modify, enlarge, abrogate or restrict* . . . (ii) *any* immunity or *right of indemnification available to or conferred upon any defendant for any negligent or wrongful act or omission*; . . . and (iv) any liability arising by reason of a non-delegable duty or by reason of the doctrine of respondeat superior." (Emphasis added.)

The plain meaning of the highlighted statutory language appears to be that Wincaf's common-law right of indemnification against Bronte should operate just as it would have operated had CPLR article 16 never been enacted. At this point, we should note that the rule of indemnification that Wincaf invokes against Bronte was a well-established part of the legal landscape when article 16 was enacted. Specifically, at that time (1986), it had long been settled that, where a party subject to a statutory nondelegable duty was held vicariously liable (without itself being at fault) for the failure of its delegate to fully discharge that duty, the vicariously liable party was entitled to be fully indemnified by its nonperforming delegate for the resulting liability (*see Kelly v Diesel Constr. Div. of Carl A. Morse*, 35 NY2d 1 [1974]; *Rogers v Dorchester Assoc.*, 32 NY2d 553 [1973]). In *Kelly*, for example, a general contractor vicariously liable for the negligence of its subcontractors under, inter alia, Labor Law § 240—the same statute under which Wincaf has been held liable—was ruled to be entitled to indemnification from the subcontractor whose negligence had caused the plaintiff's injuries (35 NY2d at 4).

On its face, CPLR 1602 (2) (ii) appears to establish that article 16 was not intended to effect any change in the foregoing rule of indemnification, or, for that matter, any other preexisting principles of indemnification law. As one commentator remarked, CPLR 1602 (2) "makes clear that if a party was entitled to indemnification before the enactment of Article 16, he is still entitled to it" (McLaughlin, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C1602:1, 1997 Pocket Part, at 238 [1976 ed]).

This was also the conclusion of what appears to be the only prior reported judicial decision to address CPLR 1602 (2) (ii). In that case, the defendant hospital brought a third-party action for indemnification against the partners of the physician whose negligence allegedly caused the plaintiff's injuries. The partners, who were themselves only vicariously liable (under the law of

partnership) for the alleged negligence in question, asserted CPLR article 16 as an affirmative defense to the indemnification claim. The hospital moved to strike that affirmative defense, and the Supreme Court, Suffolk County (Copertino, J.), granted the motion, explaining:

> "There can be little doubt that the long list of verbs written into [CPLR 1602 (2)] by the Legislature was intended, *inter alia*, to protect a party's right to indemnification against the indemnitor's attempt to slip away from its liability to the indemnitee by raising article 16. In the case at bar, indemnification clearly is 'available to' defendant Hospital, and CPLR 1602 (2) thus prevents the [partners] from defeating that right through the application of this article." (*Noble v Ambrosio*, 151 Misc 2d 276, 281 [1990], *affd* 173 AD2d 801 [1991] [the ruling on the article 16 issue was not challenged on the appeal].)

Notwithstanding the apparent plain meaning of CPLR 1602 (2) (ii), Bronte, on its motion for renewal, persuaded the IAS court that the plain-meaning construction of that provision could not survive the Court of Appeals' 2001 decision in *Rangolan v County of Nassau* (*supra*). The *Rangolan* decision—which makes only one indirect reference to CPLR 1602 (2) (ii) (*see* 96 NY2d at 46)—holds that clause (iv) of the same subdivision ("any liability arising by reason of a non-delegable duty or by reason of the doctrine of respondeat superior") does not create a complete exception to article 16 for any defendant held liable pursuant to a nondelegable duty or the doctrine of respondeat superior.[2] Rather, *Rangolan* construes CPLR 1602 (2) (iv) as a "savings provision that preserves principles of vicarious liability" by "ensur[ing] that a defendant is liable to the same extent as its delegate or employee" (96 NY2d at 47). Stated otherwise, a vicariously liable defendant is not permitted to invoke article 16 to divest itself of liability for the fault of the tortfeasor from whose conduct the vicarious liability is derived in the first place. At the same time, the vicariously liable defendant is permitted to invoke article 16, where applicable, to apportion liability between itself and other tortfeasors for whose

---

2. Of course, subdivision (8) of CPLR 1602 does create a complete exception to article 16 for parties that, like Wincaf here, are held liable by reason of those nondelegable duties created by article 10 of the Labor Law.

conduct it is not vicariously liable (*see id.* at 47-49; *see also Faragiano v Town of Concord*, 96 NY2d at 777-778).[3]

We do not believe that anything in *Rangolan*'s construction of CPLR 1602 (2) (iv) requires us to depart from the apparent plain meaning of the statutory language in construing CPLR 1602 (2) (ii). In light of *Rangolan*, both clauses, rather than creating broad "blanket" exceptions to the applicability of CPLR article 16, simply clarify that article 16 was not intended to interfere with the operation of certain preexisting legal principles (in the case of clause [ii], rights of immunity and indemnification; in the case of clause [iv], concepts of nondelegable duty and respondeat superior). Moreover, the construction of CPLR 1602 (2) (ii) advocated by Bronte—to construe it as leaving indemnification claims intact only to the extent of the indemnitor's proportionate share of fault—would deprive the clause (insofar as it deals with indemnification) of any real force or effect. This is because CPLR 1601 (1), by its terms, does not affect a party's liability for its own proportionate share of fault in the first place. As the Court of Appeals noted in *Rangolan*, a construction of a statute that renders one of its parts "meaningless and redundant" is not favored, and should be rejected when another construction is available that harmonizes all parts of the statute with each other, "as well as with the general intent of the statute" (96 NY2d at 48).

Our construction of CPLR 1602 (2) (ii), unlike the construction of that clause urged upon us by Bronte, gives meaning and effect to the provision and, at the same time, coheres with article 16's general intent "to assure that no defendant who is assigned a minor degree of fault can be forced to pay an amount grossly out of proportion to that assignment" (*Rangolan*, 96 NY2d at 46, quoting *Insuring Our Future*, Report of Governor's Advisory Commission on Liability Insurance, at 132 [Apr. 7, 1986]). This is because the party entitled to indemnification, by definition, is not at fault for causing the injury "in any degree"

---

3. Parenthetically, we observe that Wincaf was precluded from invoking article 16 against plaintiffs in this case, not only by article 16's Labor Law exception (CPLR 1602 [8]), but also by CPLR 1602 (2) (iv), since the tortfeasors that collectively bear 100% of the fault in this case (Bronte and TOMI) were both contractors for whose conduct Wincaf, as owner, was vicariously liable "by reason of a non-delegable duty." In addition, article 16 was inapplicable to plaintiffs' claim against Wincaf to the extent of Bronte's equitable share of fault, since Bronte, as plaintiff's employer, could not be sued by plaintiffs "because of the applicability of the worker's compensation law" (CPLR 1602 [4]).

(*Rosado v Proctor & Schwartz*, 66 NY2d 21, 25 [1985]), while the party obligated to make indemnification, by definition, does bear some degree of actual fault. Under such circumstances, the law deems it desirable to shift the entire loss from the party without fault to the party with fault "to prevent a result which is regarded as unjust or unsatisfactory" (*id.* at 24, quoting Prosser and Keeton, Torts § 51, at 341 [5th ed]).

Thus, construing CPLR 1602 (2) (ii) to leave indemnification claims unaffected by the limitations of CPLR article 16 serves to shift liability from nonculpable to culpable parties, consistent with the general intent of the article as a whole, and, presumably, the specific intent behind CPLR 1602 (2) (ii). By contrast, to apply the limitations of article 16 to indemnification claims would generally have the effect, as in this case, of preventing a nonculpable defendant, like Wincaf, from shifting its liability to a culpable defendant, like Bronte. We have no reason to believe that, in enacting article 16 as part of a legislative program meant to address the crisis in the cost and availability of liability insurance (*see Insuring Our Future*, Report of Governor's Advisory Commission on Liability Insurance, *supra*, at 1), the Legislature intended to benefit fault-bearing defendants at the expense of defendants who bear no fault at all.

In opposition to the foregoing, Bronte points out that subdivision (1) of CPLR 1602 begins by stating that the limitations of CPLR article 16 "apply to any claim for contribution or indemnification."[4] As one commentator has noted, "[i]t is unclear how this provision fits into the scheme" of article 16 (Alexander, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR 1602, at 615). Perhaps the greatest difficulty posed by the opening statement of subdivision (1) is its apparent inconsistency with CPLR 1602 (2) (ii), the provision expressly preserving "right[s] of indemnification" that we have just discussed at length.

Since the conflict between CPLR 1602 (1) and 1602 (2) (ii) is not resolved, so far as we know, by article 16's legislative history, we look for guidance to the canons of statutory construction, which teach us the following:

"It is the duty of the court to harmonize conflicting

4. The remainder of CPLR 1602 (1) provides that the limitations of article 16 "shall not include" a claim for indemnification based on a preaccident written agreement (CPLR 1602 [1] [a]) or a claim by a public employee for indemnification, including such a claim pursuant to certain statutes (CPLR 1602 [1] [b]).

provisions of a statute if possible, but if there is an irreconcilable conflict, the court must preserve the paramount intention although this may lead to the rejection of some subordinate and secondary provision." (McKinney's Cons Laws of NY, Book 1, Statutes § 98 [b]; *accord Pataki v Kiseda*, 80 AD2d 100, 104 [1981], *appeal dismissed* 54 NY2d 606 [1981], *lv dismissed* 54 NY2d 831 [1981]; *Matter of Ives*, 192 Misc 2d 479, 485 [2002]; *Prudential Ins. Co. of Am. v Ward*, 154 Misc 2d 968, 970 [1992].)

Here, we believe that CPLR 1602 (2) (ii) represents the Legislature's "paramount intention" concerning the interplay between CPLR article 16 and indemnification rights, and the opening clause of CPLR 1602 (1), to the extent it appears to contradict that "paramount intention," must be deemed, in this instance, a "subordinate and secondary provision" not to be followed. The most significant factor leading us to this conclusion is the consideration that article 16's purpose—which, again, is to "remedy the inequities created by joint and several liability on low-fault, 'deep pocket' defendants" (*Rangolan v County of Nassau*, 96 NY2d at 46)—would not be furthered in any discernible way if the article were construed to limit common-law rights of indemnification. Such a construction of the article would have the effect of shifting losses from parties with fault (which, at common law, are liable for indemnification) to parties without fault (which, at common law, are entitled to recover indemnification). In this regard, it must always be borne in mind that "[t]he primary consideration of the courts in the construction of statutes is to ascertain and give effect to the intention of the Legislature" (McKinney's Cons Laws of NY, Book 1, Statutes § 92 [a]). We also find it significant that CPLR 1602 (2) (ii) uses language of greater specificity, and of more emphatic expression (*see Noble v Ambrosio*, 151 Misc 2d at 281 [noting "the long list of verbs" at the opening of subdivision (2)]), than does the opening clause of CPLR 1602 (1). In addition, the main focus of subdivision (1) clearly is provided by paragraphs (a) and (b) (addressing contractual and statutory indemnification), not by the subdivision's opening reference to contribution and indemnification claims in general.

For all of the foregoing reasons, we conclude that CPLR 1602 (2) (ii) preserves the common-law indemnification rights of a defendant whose liability is wholly vicarious, like Wincaf in this case, exactly as those rights of indemnification existed before

CPLR article 16 was enacted. Bronte does not dispute that it would have been liable for indemnification to Wincaf under pre-article 16 common law. Accordingly, the judgment entered in October 1998 properly granted Wincaf indemnification against Bronte, and the IAS court erred in granting Bronte's motion to resettle that judgment to limit Wincaf's recovery of indemnification from Bronte in accordance with article 16. Since this is sufficient to resolve the issue, we need not reach Wincaf's further argument that CPLR 1602 (8), the exception from article 16 for a person "held liable by reason of the applicability of article ten of the [L]abor [L]aw," should be deemed to apply to a claim for indemnification asserted by a person held liable under the Labor Law.

Finally, we note that Bronte argues that it should not be bound by the 1998 stipulation between plaintiffs and Wincaf that, in order to avoid a new trial on damages for pain and suffering, agreed to the additur dictated by the IAS court, and affirmed by this Court on the prior appeal. Bronte also argues that it should not be bound by Wincaf's waiver, as found by the IAS court in the 1999 order, of the application of CPLR article 50-B. We agree that Bronte could not be bound by any unilateral act of Wincaf. To the extent these issues have been properly raised on this appeal, however, we find that Bronte itself failed to preserve any objection to the form of the judgment, including the amount of damages and the lack of article 50-B structuring, by failing to serve a proposed counterjudgment, pursuant to 22 NYCRR 202.48 (c) (2), in response to Wincaf's service of its proposed judgment with notice of settlement in August 1998. Indeed, Bronte's failure to object to the judgment Wincaf submitted for settlement, which provided for complete indemnification of Wincaf by Bronte, provides yet another ground for deciding the article 16 issue in Wincaf's favor. Since the challenged aspects of the judgment (the inclusion of the additur, the lack of structuring, and the extent of indemnification) were not based on any prior order or ruling adverse to Bronte, it was incumbent on Bronte to preserve its objection to these matters by submitting a counterjudgment.

Accordingly, the order of the Supreme Court, Bronx County (Howard R. Silver, J.), entered May 12, 2003, which granted Bronte's motion for renewal of its prior cross motion to resettle the judgment, same court, entered October 13, 1998, to limit Wincaf's recovery of indemnification against Bronte in accordance with the limitations of CPLR article 16, should be re-

versed, on the law, without costs, and the motion denied. The Clerk is directed to reinstate the judgment.

ANDRIAS, J.P., SAXE, ELLERIN and LERNER, JJ., concur.

Order, Supreme Court, Bronx County, entered May 12, 2003, reversed, on the law, without costs, and the motion denied. The Clerk is directed to reinstate the judgment, same court, entered October 13, 1998.