OPINION OF THE COURT
Robert D. Lippmann, J.
Defendants 390 Tower Associates and Structure Tone, Inc. move, pursuant to CPLR 4404, for an order granting said defendants complete common-law indemnification as against the codefendant Unisul, Inc.; setting aside the apportionment of fault by the jury between defendant Neil Buckley and Unisul as being against the weight of the evidence and/or setting a new trial on the issue of apportionment between Buckley and Unisul; setting aside the verdict on the issue of liability; and rearguing all trial motions to dismiss the action against Tower Associates, Structure Tone and Buckley. Unisul cross-moves to set aside the verdict as against the weight of the evidence and on the grounds of improper evidentiary trial rulings. Plaintiff cross-moves for an order, pursuant to CPLR 5016 (b), directing entry of judgment in accordance with the jury’s verdict.
Plaintiff commenced the instant action for injuries sustained on May 4, 2000, while operating an A-200 poly-spray machine, manufactured by Unisul in 1971, that was used to apply fireproofing. At the time of the accident, plaintiff was working in a building owned by Tower Associates. Alcoa, a nonparty to the litigation, leased space from Tower Associates and retained Structure Tone as general contractor for renovation. Structure Tone subcontracted a portion of the work to defendant Commodore Construction Group, Inc., which hired defendant Buckley, plaintiffs brother-in-law, to perform the fireproofing for the job. Defendant Certainteed Corporation purchased the assets of Unisul pursuant to written agreement dated July 16, 1999.
The subject A-200 poly-spray machine contained an axle with spokes, which would break up the fireproofing material that eventually would be pushed through a hose and mixed with water so that it could be sprayed. Plaintiff, a retiree of the New York City Police Department who had never worked for Buckley *221 nor in construction before the accident, sustained injury when she became trapped in the machine and one of the spokes punctured her left arm and twisted it around the axle. As a result, plaintiff incurred compound, comminuted fractures of the left radius and ulna and derangement of her left shoulder, which required open reduction surgery as well as two subsequent surgeries.
Plaintiff commenced action against said defendants on January 10, 2002, alleging claims of, inter alla, common-law negligence and violations of Labor Law §§ 200, 240 and 241 (6) against Tower Associates, Structure Tone, Commodore and Buckley; and claims of negligence, breach of warranty and strict liability against Unisul and Certainteed. The action and all cross claims against Certainteed and Commodore were respectively discontinued by voluntary stipulation of all parties and dismissed (Omansky, J.) prior to trial.[1] Buckley defaulted, having failed to appear.
On October 14, 2004, the jury rendered a verdict in favor of plaintiff, apportioning fault as 35% against Buckley and 65% against Unisul, and awarding plaintiff total damages in the amount of $856,068.[2] The jury found, inter alla, that there was a violation of Labor Law § 241 (6), Buckley and Unisul were negligent, Unisul breached its warranty of fitness and duty to warn, and that the A-200 poly-spray machine manufactured by Unisul was defective. The instant posttrial motions ensued.
As an initial matter the court notes that although defendants raise various challenges to the trial proceedings, including alleging erroneous evidentiary rulings and failure to properly charge the jury, requesting to set aside the verdict as against the weight of the evidence and seeking to reapportion liability, the parties have declined to submit a trial transcript despite having been provided an opportunity to do so. To the extent that the court is expected to rely upon recollection and the parties’ characterization of evidence and testimony as to what the record contains, the applications are inadequate without a copy of the transcript, and/or relevant excerpts of testimony and arguments.
*222 Turning to the issue of whether Tower Associates and Structure Tone are entitled to common-law indemnification from Unisul, it is well settled that at common law a party held liable only vicariously or by imputation of law may seek indemnification from the actual wrongdoer primarily liable for the injury (see Chapel v Mitchell, 84 NY2d 345 [1994]). The statutory rules of comparative fault, contribution and apportionment do not abrogate the right of common-law indemnification of a passive tortfeasor vis-á-vis that of an active wrongdoer (Salamone v Wincaf Props., 9 AD3d 127 [1st Dept 2004]; Hudgins v City of New York, 4 Misc 3d 1023[A], 2004 NY Slip Op 51009[U] [Sup Ct, NY County 2004]; CPLR 1602 [2] [ii]).
Although article 16 of the CPLR modifies common-law joint tortfeasors’ liability in certain circumstances (see Rangolan v County of Nassau, 96 NY2d 42, 46 [2001]), “CPLR 1602 (2) (ii) preserves the common-law indemnification rights of a defendant whose liability is wholly vicarious . . . exactly as those rights of indemnification existed before CPLR article 16 was enacted” (Salamone, 9 AD3d at 139-140). In pertinent part, CPLR 1602 (2) (ii) provides that article 16 shall “not be construed to impair, alter, limit, modify, enlarge, abrogate or restrict . . . (ii) any immunity or right of indemnification available to or conferred upon any defendant for any negligent or wrongful act or omission.” Accordingly, CPLR 1602 (2) “reaffirm[s] ‘certain pre-existing statutory and common law limitations on liability’ ” (Rangolan, 96 NY2d at 46, citing Alexander, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR 1602, at 616).
Applying the foregoing here, Tower Associates and Structure Tone are article 10 Labor Law defendants devoid of any active negligence in the happening of the accident. The jury found liability on behalf of these defendants pursuant to a violation of Labor Law § 241 (6), based on the absence of a required point of operation safeguard on the subject A-200 poly-spray machine that Unisul designed and manufactured. The Labor Law violation was premised on defendants’ noncompliance with Industrial Code (12 NYCRR) § 23-9.11 (e), which requires machines of the type found to have caused plaintiffs injuries to be protected by a grating covering the revolving blades. Specifically, 12 NYCRR 23-9.11 (e) provides that the revolving blades of trough type mixers akin to the machine that plaintiff operated “shall be guarded with a substantial iron grating consisting of crossbars of one-half inch round stock or its equivalent, spaced not to *223 exceed five inches between bars and located at least five inches above the blades.” As owner and general contractor for the renovation of the premises, Tower Associates and Structure Tone are vicariously responsible to plaintiff for the violation of Labor Law § 241 (6), based on the subject machine’s absence of the required safeguard. Thus, Tower Associates and Structure Tone, who were not active wrongdoers in the happening of this accident, are liable to plaintiff as a matter of law. Accordingly, Tower Associates and Structure Tone may seek recompense from Unisul, who designed and manufactured the defective machine.
Contrary to Unisul’s contentions otherwise, this court’s findings parallel the decision of the Appellate Division, First Department’s decision in Salamone v Wincaf Props. (9 AD3d 127 [2004]), the seminal case analyzing CPLR 1602 (2) (ii). At issue in Salamone was “whether the protection of CPLR article 16, although unavailable to the faultless, vicariously liable owner vis-a-vis plaintiff, limits the extent to which that owner may obtain common-law indemnification from a contractor that is actually at fault, but whose proportionate share of the fault is less than 50%” (Salamone, 9 AD3d at 129).
The plaintiff in Salamone, a worker who fell through a roof, sued the owner of the premises, Wincaf, alleging Labor Law violations. The owner sued the two contractors, Bronte and TOMI, the parties actually at fault, in a third-party action. After paying the $3,300,000 judgment that the plaintiff obtained against it, Wincaf sought indemnification from the two contractors. The Salamone court concluded that Wincaf s liability was purely vicarious, pursuant to Labor Law § 240 (1), and that there had been no showing of fault on its part. It was determined that Bronte and TOMI bore approximately 22% and 78% of the responsibility, respectively. After TOMI became defunct, Wincaf sought full indemnity from Bronte. The Salamone court awarded Wincaf full indemnification, rejecting Bronte’s argument that it was protected by article 16 and that it was only severally liable for its 22% proportionate share of the claim.
Similar to the owner in Salamone, Tower Associates and Structure Tone are culpable by virtue of vicarious liability as Labor Law article 10 defendants. Unisul, in contrast, was at least partially directly at fault for the happening of the accident and the law, as regards to indemnification, has long “deem[ed] it desirable to shift the entire loss from the party without fault to the party with fault ‘to prevent a result which is regarded as *224 unjust or unsatisfactory’ ” (Salamone, 9 AD3d at 138, quoting Rosado v Proctor & Schwartz, 66 NY2d 21, 24 [1985]). This construction is consistent with article 16’s overall purpose to provide relief to a defendant whose liability is “grossly out of proportion” to its actual fault (Alexander, 2004 Supp Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR 1602, 2005 Pocket Part, at 81).
The court notes that Unisul’s reliance upon Roseboro v New York City Tr. Auth. (286 AD2d 222 [1st Dept 2001]), in arguing that Tower Associates and Structure Tone are barred by loches in raising common-law indemnification, is misplaced. Tower Associates and Structure Tone raised the issue of indemnification in their answer, which contained cross claims specifically seeking recovery from Unisul predicated on theories of common-law and contractual indemnification. Moreover, Roseboro involved an intentional tort requiring plaintiff to allege and prove that one or more of the exemptions stated in CPLR 1601 and/or 1602 applied. The Court found that the defendants in Roseboro were placed at a disadvantage and could not properly prepare for trial because the plaintiff failed to allege timely the particular ground for exemption in her pleadings. At issue here, however, is not the failure to allege one of the enumerated exceptions to article 16 but, rather, the savings clause of CPLR 1602, which preserves the common-law rules of indemnification. In light of the fact that Tower Associates and Structure Tone specifically raised the issue of common-law indemnification in their answer, Unisul’s reliance upon Roseboro is unpersuasive.
Because the court finds that Tower Associates and Structure Tone are entitled to seek recompense from Unisul pursuant to CPLR 1602 (2) (ii), it need not pass on defendants’ alternative grounds for indemnification premised upon CPLR 1602 (8) (see Roebuck v Roebuck, 35 AD2d 714 [1st Dept 1970]; see also Salamone, 9 AD3d at 140).
As to the branch of Tower Associates’ and Structure Tone’s motion which seeks to set aside the jury percentages of assessment of fault as between defendants Unisul and Buckley and/or set aside the jury verdict on the issue of liability, defendants’ request is denied. The trial court’s authority to set aside a verdict is found in CPLR 4404 (a), providing in pertinent part that “the court may set aside a verdict ... as a matter of law or it may order a new trial of . . . [a] separable issue where the verdict is contrary to the weight of the evidence [or] in the interest of justice.” A court should be guided by the rule that if *225 a verdict is one which reasonable persons could have rendered after receiving conflicting evidence, a court should not substitute its judgment for that of the jury’s. While great discretion and caution are entrusted with the trial court in deciding motions to set aside a jury’s verdict, a court must exercise due caution and restraint when exercising its power to disturb a jury’s findings (see Mazariegos v New York City Tr. Auth., 230 AD2d 608 [1st Dept 1996]).
Here, the jury’s apportionment findings between the defendants and determination that Tower Associates and Structure Tone, as well as Unisul, were liable for plaintiffs injuries were well within fair interpretation of the evidence. Evidence at trial supported that the subject A-200 poly-spray machine should have been manufactured with a top guard safety device. Paul Glasgow, called by plaintiff and the only engineering expert to testify, stated that it would have been a departure from good and accepted engineering practice to have manufactured the machine without a top guard safety device. Glasgow also testified that the subject A-200 poly-spray machine was never manufactured with the required safety device based on his finding that there was no evidence of any welding on the machine where the safeguard would have been located.
Evidence at trial also showed that Buckley supplied the machine to plaintiff and instructed her on how to operate it. In comparison to Buckley’s negligence, which was contemporaneous with the accident, Unisul’s negligence was remote in time, having manufactured the machine nearly 30 years before the accident. Moreover, while Unisul maintained the initial obligation to manufacture a machine that was compliant with required statutory specifications, Buckley had the last opportunity to protect users and was hired as a contractor with the necessary equipment and expertise in fireproofing. Accordingly, there is no reason to disturb the verdict regarding liability or apportionment thereof among the defendants as the jury’s findings of negligence and apportionment of culpability are supported by fair interpretation of the evidence.
As to that branch of Tower Associates and Structure Tone’s motion which seeks to renew and reargue all motions made at the end of the case, defendants’ failure to provide a transcript of relevant portions of the trial, set forth arguments or cite any case or statutory law in support is fatal. Defendants’ application is also without merit substantively. There was no evidence adduced at trial to show that plaintiff received workers’ compensa *226 tian benefits from either Buckley or Structure Tone or to establish that Buckley had workers’ compensation insurance. Tower Associates’ request for a dismissal on the grounds that there was no proof of it providing authorization for the construction activity giving rise to the accident is also meritless. Tower Associates is a named defendant pursuant to article 10 of the Labor Law, which includes the nondelegable quasi absolute liability imposed upon owners under Labor Law § 241 (6) (see Gordon v Eastern Ry. Supply, 82 NY2d 555 [1993]; Ross v Curtis-Palmer Hydro-Elec. Co., 81 NY2d 494 [1993]).
Unisul’s motion to set aside the verdict based, in part, upon various improper evidentiary rulings and upon the verdict being against the weight of the evidence is denied in toto. Unisul did not include any relevant portions of the trial transcript with its application, and thus, as the court stated above, the submission is defective. Nevertheless, to the extent that the court is able to address the merits raised in the application, Unisul’s contentions are unpersuasive.
Unisul contends that it was prejudicial error for the court to allow documents and testimony into evidence concerning the subsequent design change in 1974 to the A-200 poly-spray machine, years after the sale of the subject machine at issue here. The court is well aware that in a negligence-based manufacturing defect case, evidence of a defendant’s remedial measures, such as recall or redesign of the product, is not admissible to establish the defendant’s negligence if the remedial modification occurred after sale of the product (see, e.g., Cover v Cohen, 61 NY2d 261 [1984]; Caprara v Chrysler Corp., 52 NY2d 114 [1981]). The admission of such evidence is often prejudicial, of low probative value and could discourage socially responsible and desirable behavior (Caprara, 52 NY2d at 122). However, where “such evidence becomes admissible on some other theory or on another issue, such as control, impeachment or feasibility of precautionary measures, almost invariably Trial Judges have thought it best, lest the jury look upon it as an acknowledgment of negligence, to accompany its receipt with appropriate limiting instructions” (Caprara, 52 NY2d at 122).
Here, the 1974 postsale design documents were properly admitted into evidence on the issue of credibility for impeachment purposes. Mr. H. Glenn Woton, president of Unisul, testified that the subject A-200 poly-spray machine, had been manufactured with the required safeguard. Unisul, however, did not have any documents, photographs or designs to substanti *227 ate his testimony. Conversely, in existence were several drawings of a safeguard that was designed in 1973, two years after the subject machine had been sold, and a letter from Unisul advising customers of the availability of the safeguard. These documents were admitted into evidence for impeachment purposes. Further, plaintiffs engineering expert testified that the A-200 poly-spray machine had not been equipped with the safeguard as described by Unisul’s president. In support of the expert’s opinion, plaintiff submitted documents created after the production of the machine, arguing that the documents were inconsistent with Unisul’s position that it had been installing the required safeguards on the A-200 since its inception in the 1960s.
Unisul also contends that it was error for the court to modify PJI 2:141 (2004) in its charge to the jury. To the extent that this objection was made and preserved on the record, this branch of the motion is denied. The court found that there was no evidence adduced at trial to support that plaintiff misused the subject machine, and thus charged the jury with the comparative negligence instruction set forth in PJI 2:36 (2004). The court determined that to instruct the jury also in the comparative negligence instructions set forth in PJI 2:141 would have been duplicative, confusing and inappropriate.
As to Unisul’s request to set aside the verdict as against the weight of the evidence on the grounds that the jury found plaintiffs negligence to be not a substantial factor in the happening of the accident, that branch of the application is also denied. Evidence was presented at trial that plaintiff had never worked in construction before the three days leading up to the accident, that she relied upon her employer’s instructions on how to operate the machine and that she performed her duties in accordance with those instructions, and that Unisul manufactured a defective machine. Accordingly, it is not unreasonable that, though the jury found plaintiff negligent, it determined that the proximate cause of plaintiffs accident was the actions and/or inactions of defendants Buckley and Unisul, who were found 65% and 35% culpable, respectively.
Additionally, Unisul’s remaining contentions are equally unpersuasive or without merit. Concerning the admission into evidence of exhibit 11, consisting of various Unisul records, it is the court’s recollection that these documents were admitted upon consent of the parties as defendants were given an opportunity to cull the documents and remove any unwanted ma *228 terial. Also without merit is the contention that it was improper for the court to allow plaintiff to question Unisul’s explanation for its failure to provide documents demonstrating that it manufactured the subject A-200 poly-spray machine with the required safety device. Unisul makes much of the fact that it acquired possession of all documents concerning Unisul from Certainteed subsequent to selling the company and that consequently, it never retained custody of the relevant documents. However, without exchanging any of the documents to the other parties, Certainteed transferred the documents to the sole possession and control of Unisul which ultimately produced the documents that were admitted into evidence pursuant to court order from Judge Omansky, dated April 9, 2004. Accordingly, in light of the fact that Unisul claimed the machine was manufactured with the necessary safeguard despite the nonexistence of documents substantiating this claim and the plethora of evidence suggesting otherwise, it cannot be said that the court erred in allowing plaintiff to question the absence of any Unisul documents depicting the subject A-200 poly-spray machine with the required safety device.
Finally, as to plaintiffs cross motion directing entry of the attached proposed verdict, the court finds no basis for a 50-B hearing as Tower Associates and Structure Tone contend; however, the court will entertain proposed counter judgments that are to be submitted within 10 days of notice of entry of this order.
Accordingly, it is ordered that the motion of Tower Associates and Structure Tone to set aside the verdict and for other relief is granted to the limited extent that Tower Associates and Structure Tone are entitled to seek common-law indemnification from Unisul and the motion is otherwise denied for the reasons stated herein; and it is further ordered that the motion of Unisul to set aside the jury verdict and for other relief is denied in its entirety for the reasons stated herein; and it is further ordered that the cross motion of plaintiff to direct entry of the proposed judgment is granted to the extent that the parties have 10 days from notice of entry of the instant order to submit proposed counter judgments and that, upon the failure to do so, the court shall direct entry of plaintiffs proposed judgment.

. In a decision and order dated March 23, 2004, Judge Omansky also dismissed the claims of common-law negligence and violation of Labor Law §§ 200 and 240 against Tower Associates and Structure Tone, leaving only plaintiffs Labor Law § 241 (6) claim against Tower Associates and Structure Tone.

. Specifically, the parties having stipulated to damages in the amount of $56,068 for past medical expenses, the jury awarded plaintiff $500,000 for past pain and suffering and $300,000 for future pain and suffering.