OPINION OF THE COURT
 

 Chief Judge Kaye.
 

 The major issue on this appeal is whether apportionment of damages for personal injuries is permissible between a
 
 *274
 
 negligent landlord and the nonparty assailant who attacked the plaintiff-tenant
 
 (see
 
 CPLR 1602 [5]). We conclude that it is.
 

 On May 14, 1992, plaintiff was attacked while entering her Greenwich Village apartment. When she arrived home from her teaching day at approximately 3:00 p.m., she noticed that the building’s front doors and interior security doors were open. She walked up to the third floor and saw a stranger, Eugene Adger, on the staircase leading to the fourth floor. As she entered her third-floor apartment, Adger pushed her in, grabbed her around the throat and dragged her into the bedroom. He pinned her to the bed, forcibly removed her jewelry and tied her hands behind her back. As he left the bedroom to rummage through the apartment, plaintiff freed herself and shouted for a neighbor, causing Adger to flee. Adger was later apprehended and convicted of a series of crimes, including the attack on plaintiff.
 

 Plaintiff brought a personal injury action against the building owner and managing agent, alleging inadequate building security. Defendants moved for summary judgment on the strength of an affidavit from Adger, in which he claimed that he found the building doors locked and gained entrance by ringing buzzers until someone let him in. In opposition to defendants’ motion, plaintiff submitted an affidavit from an investigator stating that Adger told him he had entered the building through an open door, as well as transcripts of tape-recorded telephone conversations between the investigator and Adger to the same effect.
 

 Supreme Court granted defendants’ motion for summary judgment and dismissed the complaint, concluding that plaintiff failed to make out a prima facie case supporting her contention that Adger entered the building through an open door. The Appellate Division reversed and reinstated the complaint, holding that the investigator’s affidavit, the telephone conversation transcripts and plaintiff’s own sworn statement raised material issues of fact (246 AD2d 328,
 
 lv dismissed
 
 92 NY2d 876).
 

 After trial, the jury found that Adger had gained entrance to the premises through a negligently maintained entrance, which was a substantial factor in causing plaintiff’s injuries. The jury awarded plaintiff $400,000 for past injuries and $700,000 for future pain and suffering, and apportioned the liability 50-50
 
 *275
 
 between defendants and Adger. The trial court granted plaintiffs motion to set aside the apportionment, concluding that defendants had breached a nondelegable duty and thus came within an exception (CPLR 1602 [2] [iv]) to the otherwise applicable limitation of liability under CPLR article 16.
 

 The Appellate Division affirmed, over a two-Justice dissent. Citing
 
 Rangolan v County of Nassau
 
 (96 NY2d 42 [2001]), the Court recognized the Trial Judge’s error in holding that defendants’ nondelegable duty prevents apportionment. The Appellate Division, however, found the defendants liable for the entire amount of the plaintiffs noneconomic loss under another exception to CPLR article 16 — section 1602 (5) — for “actions requiring proof of intent.” We now modify the Appellate Division order by denying plaintiffs CPLR 4404 (a) motion to set aside the apportionment of damages.
 

 Apportionment
 

 We return, once again, to consideration of CPLR article 16
 
 (see e.g. Rangolan,
 
 96 NY2d 42;
 
 Morales v County of Nassau,
 
 94 NY2d 218 [1999]). Article 16 has been variously described as an “undistinguished piece of statutory prose” (Siegel, NY Prac § 168A, at 267 [3d ed]), and clear and elegant as the Internal Revenue Code (McLaughlin, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR C1602:l, 1996 Pocket Part, at 228). Whatever its literary merit, it has in practical application engendered difficulty — as it does in the case before us, centered on section 1602 (5).
 

 One thing is certain: CPLR article 16 was enacted in 1986 as part of a package of tort reform legislation that was the product of “a painstaking balance of interests”
 
 (Morales,
 
 94 NY2d at 224). The purpose of the statute was to “remedy the inequities created by joint and several liability on low-fault, ‘deep pocket’ defendants”
 
 (see Rangolan,
 
 96 NY2d at 46). To that end, section 1601 modifies the common-law rule of joint and several liability by making a joint tortfeasor whose share of fault is 50% or less liable for plaintiffs noneconomic loss only to the extent of that tortfeasor’s share of the total noneconomic loss. In effect, low-fault tortfeasors are liable only for their actual assessed share of responsibility, rather than the full amount of plaintiffs noneconomic loss.
 

 Section 1602, however, excepts certain types of actions from the ambit of section 1601, including — most relevantly — “actions requiring proof of intent” (CPLR 1602 [5]). Plainly, this exception applies to prevent defendants who are found to have
 
 *276
 
 committed an intentional tort from invoking the benefits of section 1601. The question before us, however, is how the exception applies in the hybrid situation presented here. Plaintiff argues that her negligence claim against defendants, because it necessarily involves Adger’s intentional act, is also an “action requiring proof of intent,” thus precluding apportionment by defendants. Defendants counter that the issue was resolved in their favor in
 
 Rangolan,
 
 and in any event that denying apportionment would contravene both the words and the purpose of the statute.
 

 The issue has split the Appellate Divisions. Indeed, the very day the First Department, in a divided vote,
 
 precluded
 
 apportionment in the present case (285 AD2d 315), two other panels, in divided votes,
 
 allowed
 
 apportionment
 
 (see Concepcion v New York City Health & Hosps. Corp.,
 
 284 AD2d 37 [2001];
 
 Roseboro v New York City Tr. Auth.,
 
 286 AD2d 222 [2001]). In a preface to the three decisions, the First Department Justices announced their “inability to reconcile their views” on the issue
 
 (see
 
 Riccardi,
 
 Appeals Court Splits on Three Intruder Cases,
 
 NYLJ, Aug. 3, 2001, at 1, col 3). Also in a divided vote, the Second Department read section 1602 (5) to permit apportionment
 
 (Siler v 146 Montague Assoc.,
 
 228 AD2d 33 [1997],
 
 appeal dismissed
 
 90 NY2d 927 [1997]). Each side points to anomalous applications of the other’s position
 
 (see e.g. Roseboro,
 
 286 AD2d at 227;
 
 Siler,
 
 228 AD2d at 40). Amicus curiae State Trial Lawyers Association urges that plain meaning and public policy preclude apportionment; amicus curiae City of New York, noting that premises liability cases are a significant segment of cases against the City, urges that plain meaning and public policy permit apportionment.
 

 As we proceed to resolve the issue before us, we recognize that there is cogency and anomaly in both positions, and that our role in matters of statutory interpretation is to implement the will of the Legislature as we see it, knowing that the Legislature has the last word as to what it intended.
 

 We first note that our decision in
 
 Rangolan
 
 does not resolve this question. There, we held that CPLR 1602 (2) (iv) was not an exception to article 16, but rather a savings provision that preserved principles of vicarious liability
 
 (see Rangolan,
 
 96 NY2d at 47). CPLR 1602 (5) was neither raised by the parties nor addressed by the Court.
 

 Three grounds support our conclusion that the section 1602 (5) exception does not apply here. The first is plain language.
 
 *277
 
 Plaintiffs complaint asserted only negligence as the basis for the defendants’ liability. Because plaintiffs negligence claim is not an “action requiring proof of intent,” section 1602 (5) on its face does not apply to preclude apportionment of liability. Plaintiff argues that her cause of action did require proof of intent in that she was required to prove that the assault, an intentional act, in fact occurred. Defendants’ liability, however, did not depend on proof of Adger’s state of mind. To prove her case, plaintiff had only to show that she was injured as a result of the defendants’ failure to provide adequate security on their premises. That a nonparty tortfeasor acted intentionally does not bring a pure negligence action within the scope of the exclusion
 
 (see Roseboro,
 
 286 AD2d at 224;
 
 Concepcion,
 
 284 AD2d at 39;
 
 Siler,
 
 228 AD2d at 39;
 
 see also Agoado Realty Corp. v United Intl. Ins. Co.,
 
 95 NY2d 141, 146 [2000]).
 

 This reading of CPLR 1602 (5), moreover, is consistent with the exception to apportionment set out in section 1602 (11). Section 1602 (11) provides that the limitation of liability set forth in section 1601 shall not apply to “any parties found to have acted knowingly or intentionally, and in concert, to cause the acts or failures upon which liability is based.” While section 1602 (5) forecloses intentional tortfeasors from seeking apportionment irrespective of the mental state of any other tortfeasors, section 1602 (11) precludes apportionment with any parties found to have acted knowingly or intentionally
 
 and in concert.
 
 The primary purpose of subdivision (11) is obviously to prevent apportionment among multiple intentional tortfeasors acting together when dividing liability among them would bring them under the section 1601 50% floor. Thus, our interpretation of section 1602 (5) does not render section 1602 (11) duplicative.
 

 Second, what little legislative history there is — and the record by this time has surely been scoured — accords with our reading of section 1602 (5). The Governor’s Memorandum of Approval indicates that article 16 preserves joint and several liability for “instances in which the
 
 defendant’s
 
 acts upon which liability is based are willfully performed or intentionally performed in concert with others” (Governor’s Mem approving L 1986, ch 682, 1986 McKinney’s Session Laws of NY, at 3184 [emphasis added];
 
 see also
 
 Attorney General Mem to Governor, at 2, Bill Jacket, L 1986, ch 682). There is, conversely, no indication in the legislative history that section 1602 (5) was intended to create what would amount to a broad exception to apportionment at the expense of the low-fault, merely negligent
 
 *278
 
 landowners and municipalities — the very parties article 16 intended to benefit
 
 (see Rangolan,
 
 96 NY2d at 48).
 

 Finally, we know the objective the Legislature intended by article 16 and note that plaintiffs interpretation would result in the very inequity the Legislature sought to eliminate. Under plaintiff’s reading of the statute, the right of a low-fault defendant to apportion would depend entirely on the nature of the culpability of the third-party tortfeasor. A negligent defendant could apportion liability with a negligent or reckless third-party tortfeasor, but not an intentional tortfeasor
 
 (see Siler,
 
 228 AD2d at 40). Such a result is not only illogical but also inconsistent with the chief remedial purpose of article 16.
 

 We therefore conclude that the jury’s apportionment of damages should be reinstated.
 

 Constructive Notice
 

 Citing
 
 Bogart v F.W. Woolworth Co.
 
 (24 NY2d 936 [1969]) and
 
 Gordon v American Museum of Natural History
 
 (67 NY2d 836 [1986]), defendants challenge the sufficiency of evidence of notice of a dangerous condition.
 
 Bogart
 
 involved a stray piece of candy or cookie on the noontime sidewalk outside defendant’s store;
 
 Gordon
 
 involved a bit of waxy paper on the front steps of a heavily trafficked museum. In both cases we held that general awareness of a dangerous condition cannot create an inference of constructive notice of the particular condition that caused the plaintiff’s injury. “To constitute constructive notice, a defect must be visible and apparent and it must exist for a sufficient length of time prior to the accident to permit defendant’s employees to discover and remedy it”
 
 (Gordon,
 
 67 NY2d at 837).
 

 Defendants here had far more than, a general awareness of stray litter on a busy street. Several tenants had complained about the building’s front doors frequently being left open. Additionally, there was evidence of an assault and multiple burglaries in the building and adjoining buildings owned by defendant within two years preceding the attack on plaintiff. Defendants thus had actual notice of a particular recurring safety issue that was reasonably within their power to correct. This was sufficient to establish constructive notice of the specific recurrence on the day of the assault on plaintiff. Defendants’ remaining contentions before us either lack merit or constitute harmless error.
 

 Accordingly, the order of the Appellate Division should be modified, without costs, by denying plaintiff’s motion to set
 
 *279
 
 aside the apportionment of damages and remitting to Supreme Court for further proceedings in accordance with this opinion and, as so modified, affirmed.
 

 Judges Smith, Levine, Cipaeick, Wesley, Rosenblatt and Geaffeo concur.
 

 Order modified, etc.