■ STEPHEN R. FRANK et al., Plaintiffs, v MEADOWLAKES DEVELOPMENT CORPORATION et al., Defendants. MEADOWLAKES DEVELOPMENT CORPORATION, Third-Party Plaintiff-Respondent, v HOME INSULATION AND SUPPLY, INC., Third-Party Defendant-Appellant. [798 NYS2d 820]—

Appeal from an order and judgment (one paper) of the Supreme Court, Erie County (John A. Michalek, J.), entered February 12, 2004 in a personal injury action. The order and judgment, inter alia, granted judgment in the amount of $1,552,160 in favor of third-party plaintiff Meadowlakes Development Corporation and against third-party defendant Home Insulation and Supply, Inc.

It is hereby ordered that the order and judgment so appealed from be and the same hereby is affirmed without costs.

Memorandum: As we set forth in a prior appeal, plaintiffs commenced this Labor Law and common-law negligence action after Stephen R. Frank (plaintiff) fell from a temporary staircase while carrying insulation to the second floor of a home under construction (*Frank v Meadowlakes Dev. Corp.*, 256 AD2d 1141

[1998]). After a trial, a jury apportioned liability 10% to plaintiff; 10% to third-party defendant Home Insulation and Supply, Inc. (Home), plaintiff's employer at the time of the accident; and 80% to defendant D.J.H. Enterprises, Inc., doing business as Danni-Marr Builders (DJH), the general contractor. Defendant-third-party plaintiff Meadowlakes Development Corporation (Meadowlakes) was held liable pursuant to Labor Law § 240 (1) as an owner, and, after the trial, Supreme Court granted the motion of Meadowlakes for common-law indemnification against Home and DJH. DJH and Meadowlakes subsequently settled with plaintiffs. Home now appeals from an order and judgment that, inter alia, granted Meadowlakes a money judgment against Home for the amount that Meadowlakes paid in its settlement with plaintiffs and its fees as well as disbursements in defense of the action, plus interest.

The court properly denied Home's motion for a directed verdict dismissing the third-party complaint. The contention of Home that there is no basis in the record to allocate any fault to it is without merit. Home had the responsibility to instruct, train, equip, and supervise plaintiff (*see Golda v Hutchinson Enters.*, 247 AD2d 863 [1998]; *see also Murphy v Islat Assoc. Graft Hat Mfg. Co.*, 264 AD2d 583, 584-585 [1999]; *see generally Felker v Corning Inc.*, 90 NY2d 219, 226 [1997]). Although Home contends that it was not negligent because it did not build the staircase nor was it responsible to do so, Home had overall responsibility for plaintiff. The court properly submitted to the jury the question whether Home was at fault for the accident (*see Frank*, 256 AD2d at 1143).

Home further contends that Meadowlakes is not entitled to recover from Home the full amount it paid to plaintiffs, but rather is limited to only 10% of that amount, representing Home's proportionate share of liability. We disagree. It is well settled that "an owner or general contractor who is held strictly liable under Labor Law § 240 (1) is entitled to full indemnification from the party actually responsible for the incident" (*Gillmore v Duke/Fluor Daniel*, 221 AD2d 938, 939 [1995]). The principles of common-law indemnification allow the party held vicariously liable to shift the entire burden of the loss to the actual wrongdoer (*see Mas v Two Bridges Assoc.*, 75 NY2d 680, 690 [1990]; *Guzman v Haven Plaza Hous. Dev. Fund Co.*, 69 NY2d 559, 567-568 [1987]; *17 Vista Fee Assoc. v Teachers Ins. & Annuity Assn. of Am.*, 259 AD2d 75, 80 [1999]; *see also Rogers v Dorchester Assoc.*, 32 NY2d 553, 565 n 2 [1973]). Contrary to Home's contention, "CPLR article 16 does not limit the owner's right of indemnification" because of the savings provision for

indemnification claims set forth in CPLR 1602 (2) (ii) (*Salamone v Wincaf Props.*, 9 AD3d 127, 129 [2004], *lv dismissed* 4 NY3d 794 [2005]).

All concur except Green, J.P., and Hurlbutt, J., who dissent in part and vote to modify in accordance with the following memorandum:

Green, J.P., and Hurlbutt, J. (dissenting in part). We respectfully dissent in part because, unlike the majority, we do not agree with the conclusion of the First Department in *Salamone v Wincaf Props.* (9 AD3d 127 [2004], *lv dismissed* 4 NY3d 794 [2005]) that, based upon that Court's construction of CPLR 1602 (2) (ii), the limitation of liability to a proportionate share of culpability pursuant to CPLR 1601 (1) for a defendant found to be 50% or less liable does not apply to a claim for indemnification against a party found responsible for only 10% of the fault. Thus, unlike the majority, we agree with third-party defendant Home Insulation and Supply, Inc. (Home) that defendant-third-party plaintiff Meadowlakes Development Corporation (Meadowlakes) is entitled to indemnification of only 10% of the amount paid by Meadowlakes to plaintiffs, inasmuch as the jury apportioned only 10% of the fault to Home. We therefore would modify the order and judgment accordingly.

The underlying facts are undisputed and, indeed, are remarkably similar to those in *Salamone*. Stephen R. Frank (plaintiff), an employee of Home, was injured in the course of his employment when he fell from a temporary staircase. He and his wife commenced this action against Meadowlakes, the owner of the property on which the injury occurred, and D.J.H. Enterprises, Inc., doing business as Danni-Marr Builders (DJH), the general contractor. Meadowlakes commenced a third-party action against Home seeking common-law indemnification, and DJH in turn commenced a third-party action against Home, seeking indemnification or contribution.[1] A bifurcated trial on liability resulted in a directed verdict in favor of plaintiffs on the Labor Law § 240 (1) claim, and in addition the jury found that both DJH and Home had violated Labor Law § 241 (6). The jury apportioned 10% of the fault to plaintiff, 80% of the fault to DJH and, as previously noted, 10% of the fault to Home. Thereafter, Meadowlakes settled with plaintiffs for the sum of $1,400,000, and DJH, now defunct, settled with plaintiffs for its liability insurance policy limits of $300,000. Supreme Court granted the posttrial motion of Meadowlakes for an order granting it judg-

---

1. The accident occurred on April 12, 1991, and the action was commenced on April 1, 1992, well before the 1996 amendment to Workers' Compensation Law §§ 11 and 29 (6).

ment against both DJH and Home on the issue of common-law indemnification, including attorneys' fees and disbursements. In the "final order and judgment," the court directed the entry of a money judgment in favor of Meadowlakes and against Home in the total amount of $1,552,160, inclusive of attorneys' fees, disbursements, and interest.

We agree with Home that its liability to indemnify Meadowlakes is limited by CPLR 1602 (1) to its proportionate share of the fault as found by the jury, i.e., 10% of $1,400,000, rather than the total amount of the settlement between Meadowlakes and plaintiffs. We reach that conclusion based on the plain language of CPLR 1602, as well as the clear intent of the Legislature in enacting CPLR article 16. Consequently, we conclude that the majority erroneously relies on *Salamone*, a case in which the First Department's construction of article 16 is the converse of our construction of that article.

We begin with an analysis of the underlying basis for the enactment of CPLR article 16. As noted by the Court of Appeals in *Rangolan v County of Nassau* (96 NY2d 42, 46 [2001]), article 16 alters the common-law rule of joint and several liability by limiting the liability of a tortfeasor for noneconomic loss to its proportionate share of the fault, "provided that it is 50% or less at fault (CPLR 1601 [1])."[2] Thus, "[i]n effect, low-fault tortfeasors are liable only for their actual assessed share of responsibility, rather than the full amount of plaintiff's noneconomic loss" (*Chianese v Meier*, 98 NY2d 270, 275 [2002]). Further, article 16, "as demonstrated by its legislative history, was the product of a painstaking balanc[ing] of interests. These interests included, among many others, the burdens to be imposed on innocent plaintiffs as well as a concern that defendants at fault to a small degree were consistently paying a disproportionate share of damages awards, adversely affecting the availability and affordability of liability insurance" (*Morales v County of Nassau*, 94 NY2d 218, 224-225 [1999]). Thus, as noted in *Rangolan*, the Governor's Advisory Commission on Liability Insurance "recommended that the rule of joint and several liability be amended 'to assure that no defendant who is assigned a minor

---

**2.** CPLR 1601 (1) provides in pertinent part: "Notwithstanding any other provision of law, when a verdict or decision in an action or claim for personal injury is determined in favor of a claimant in an action involving two or more tortfeasors jointly liable or in a claim against the state and the liability of a defendant is found to be fifty percent or less of the total liability assigned to all persons liable, the liability of such defendant to the claimant for non-economic loss shall not exceed that defendant's equitable share determined in accordance with the relative culpability of each person causing or contributing to the total liability for non-economic loss . . . ."

degree of fault can be forced to pay an amount grossly out of proportion to that assignment' '' (96 NY2d at 46). Consequently, article 16 ''was intended to remedy the inequities created by joint and several liability on low-fault, 'deep pocket' defendants'' (*id.*).

As part of its ''painstaking balanc[ing] of interests'' (*Morales*, 94 NY2d at 224), the Legislature enacted section 1602 (1), which provides that ''[t]he limitations set forth in this article shall . . . apply to any claim for contribution or indemnification,'' except in cases of contractual indemnification or statutory indemnification of public employees (*see* CPLR 1602 [1] [a], [b]). As the Court of Appeals explained in *Rangolan* (96 NY2d at 46-47), section 1602 (2) enumerates four ''savings provision[s],'' which are intended to ensure the continuation of certain preexisting bases for and limitations on liability.[3] In our view, subdivisions (1) and (2) of section 1602, read together in their entirety and in light of the legislative purpose for the enactment of article 16, both continue the right of common-law indemnification and limit the liability for noneconomic loss of indemnitors found 50% or less responsible such that they are liable only for their respective shares of fault. We note that, in *Rangolan*, the Court concluded that the limiting language of section 1602 (2) (iv) was not an exception to the rule of proportionate liability, but rather that limiting language preserved the rules of vicarious liability and nondelegable duty while allowing apportionment between a vicariously liable defendant and other defendants. So too, we conclude herein that the Legislature has preserved the right of indemnification by the enactment of section 1602 (2) (ii), but has limited the liability of indemnitors responsible for 50% or less of the total fault to their proportionate share of the fault by the enactment of section 1602 (1). Such a construction gives effect to '' 'all the language employed by the particular legislation' '' (*Rangolan*, 96 NY2d at 48, quoting *Ferrin v New York State Dept. of Correctional Servs.*, 71 NY2d 42, 47 [1987]), and is ''fully consistent with article 16's purpose'' of protecting ''deep pocket'' defen-

**3.** Section 1602 (2) provides that the limitations set forth in article 16 shall ''not be construed to impair, alter, limit, modify, enlarge, abrogate or restrict (i) the limitations set forth in section twenty-a of the court of claims act; (ii) any immunity or right of indemnification available to or conferred upon any defendant for any negligent or wrongful act or omission; (iii) any right on the part of any defendant to plead and prove an affirmative defense as to culpable conduct attributable to a claimant or decedent which is claimed by such defendant in the diminution of damages in any action; and (iv) any liability arising by reason of a non-delegable duty or by reason of the doctrine of respondeat superior.''

dants such as "municipalities, landowners and employers" from paying more than their proportionate share of noneconomic loss (*id.*).

In *Salamone*, on facts virtually indistinguishable from those at bar, the First Department reached the opposite conclusion. Specifically, the First Department concluded that subdivisions (1) and (2) of section 1602 must be construed to preserve joint and several liability for indemnification of parties whose proportionate share of the fault is 50% or less (*see Salamone*, 9 AD3d at 139-140). The Court first addressed section 1602 (2) (ii), concluding that its "plain meaning . . . appears to be that [the owner's] common-law right of indemnification against [plaintiff's employer] should operate just as it would have operated had CPLR article 16 never been enacted" (*id.* at 135). The Court further reasoned that to construe section 1602 (2) (ii) as "leaving indemnification claims intact only to the extent of the indemnitor's proportionate share of fault" would "deprive the clause (insofar as it deals with indemnification) of any real force or effect" because "CPLR 1601 (1), by its terms, does not affect a party's liability for its own proportionate share of fault in the first place" (*id.* at 137).

The First Department in *Salamone* also reasoned that its construction of section 1602 (2) (ii) furthers the legislative intent of article 16 to avoid payments by defendants out of proportion to their degree of fault by enabling a defendant free of any degree of fault to shift its entire loss to a party found to be at fault (*see id.* at 137-138). The Court further concluded that there is an irreconcilable conflict in the express language of subdivisions (1) and (2) (ii) of section 1602, and thus relied upon the maxim of statutory construction that, where there is an irreconcilable conflict, " 'the court must preserve the paramount intention although this may lead to the rejection of some subordinate and secondary provision' " (*id.* at 139, quoting McKinney's Cons Laws of NY, Book 1, Statutes § 98 [b]). The Court thus reasoned that its construction of 1602 (2) (ii) as preserving joint and several liability of all indemnitors, pursuant to which it necessarily disregards the section 1602 (1) limitations of such claims, would preserve the Legislature's " 'paramount intention' " by avoiding the "shifting [of] losses from parties with fault . . . to parties without fault" (*id.* at 139). In addition, the Court found it significant that section 1602 (2) (ii) "uses language of greater specificity, and of more emphatic expression," and that the "main focus" of section 1602 (1) is on paragraphs (a) and (b) and not on its "opening reference to contribution and indemnification claims in gener-

al" (*id.*). The Court thus concluded that section 1602 (2) (ii) "preserves the common-law indemnification rights of a defendant whose liability is wholly vicarious . . . exactly as those rights of indemnification existed before CPLR article 16 was enacted" (*id.* at 139-140).

In our view, that analysis and conclusion inverts the plain language of CPLR 1602 and misperceives what the First Department in *Salamone* describes as the Legislature's "paramount intention" in enacting article 16 (*id.* at 139). While the language in section 1602 (1) that the limitations set forth in article 16 "shall . . . apply to any claim for contribution or indemnification" does not include the litany of verbs linked to the preservation provisions of section 1602 (2), that does not mean that the latter should be given effect to the exclusion of the former. It is a basic maxim of statutory construction that we must discern the legislative intent "from the words and language used, and the statutory language is generally construed according to its natural and most obvious sense, without resorting to an artificial or forced construction" (McKinney's Cons Laws of NY, Book 1, Statutes § 94). It is also appropriate to consider the specific "mischief" sought to be remedied by the legislation (§ 95), and to construe the statute in a manner "which furthers the object, spirit and purpose of the statute" (§ 96). Of course, section 1602 must be "construed as a whole" (§ 97), giving "effect and meaning," if possible, "to the entire statute and every part and word thereof" (§ 98 [a]). Finally, "[s]tatutes will not be construed as to render them ineffective" (§ 144).

The application of those maxims of statutory construction ineluctably leads to the conclusion that the correct interpretation of sections 1602 (1) and 1602 (2) (ii) is that parties found vicariously or otherwise liable without actual fault retain the right to seek indemnification in the same manner as before the enactment of article 16 (*see generally Raquet v Braun*, 90 NY2d 177, 183 [1997]; *Mas v Two Bridges Assoc.*, 75 NY2d 680, 690; *Rogers v Dorchester Assoc.*, 32 NY2d 553, 562-563 [1973]), but where such indemnification is for noneconomic loss and is awarded against multiple indemnitors, the rule of joint and several liability no longer applies with respect to any indemnitor found less than 51% at fault. That interpretation is consistent with the plain language of subdivisions (1) and (2) (ii) of section 1602, and effectuates the manifest legislative intent of limiting the share of a tortfeasor's liability to the tortfeasor's proportionate share of the fault (*see Chianese*, 98 NY2d at 275; *Rangolan*, 96 NY2d at 46; *Morales*, 94 NY2d at 224-225).

We cannot agree with the Court in *Salamone*, and the major-

ity herein, which relies on *Salamone*, that we must give effect to the purported plain language of section 1602 (2) (ii) to the exclusion of the crystalline language of section 1602 (1) that the limitations set forth in article 16 "shall . . . apply to any claim for contribution or indemnification."[4] In our view, that approach inappropriately both disregards the plain language of and reads out of article 16 the provision of section 1602 (1) making article 16 applicable to claims for indemnity (*see generally* McKinney's Cons Laws of NY, Statutes §§ 94, 97, 144; *Matter of Rodriguez v Perales*, 86 NY2d 361, 366 [1995]; *Matter of McCulloch v New York State Ethics Commn.*, 285 AD2d 236, 240 [2001]).

As is apparent from the foregoing, we likewise disagree with the Court's conclusion in *Salamone* that subdivisions (1) and (2) (ii) of section 1602 are in irreconcilable conflict and that the "paramount" legislative intention favors continuation of joint and several liability for indemnification obligations, even where the indemnitor's equitable share of the fault has been found to be 50% or less. The Court noted that "[t]he most significant factor" in its analysis is its conclusion that the purpose of article 16 "would not be furthered in any discernable way" if article 16 were applied, according to its terms, to limit common-law indemnification claims (*Salamone*, 9 AD3d at 139). The case before us, however, illustrates that the converse is true. Application here of the rule of joint and several liability results in precisely the "evil" intended to be "suppress[ed]" by the enactment of article 16 (McKinney's Cons Laws of NY, Book 1, Statutes § 95)—a party whose equitable share of the fault has been adjudged to be but 10% liable is instead held liable for 100% of that loss. That is just the result that the Legislature sought to avoid by the enactment of article 16.

It is true that where, as here, the solvent indemnitor is less than 51% at fault and the other indemnitor is insolvent or defunct, the party entitled to indemnification will not be made whole, and in that sense there is a "shifting" of responsibility from a party at fault (the insolvent or defunct indemnitor) to a party not at fault (the indemnitee) (*Salamone*, 9 AD3d at 139). In reality, however, there is no "shifting" of the loss from the indemnitor found less than 51% at fault; that indemnitor bears no responsibility for and thus has no obligation with respect to that part of the noneconomic loss resulting from the fault of the

---

4. We recognize, however, that section 1602 (1) is redundant of CPLR 1402 insofar as it applies to claims for contribution. Section 1402 limits liability for contribution to a person's "equitable share" of a judgment, "determined in accordance with the relative culpability of each person liable for contribution."

insolvent or defunct indemnitor. Moreover, there is no reason to conclude that the Legislature intended to treat a vicariously liable defendant such as Meadowlakes any more favorably than a plaintiff who under article 16 must bear the loss in any circumstance where the primary tortfeasor has limited or no funds and the "deep pocket" tortfeasor has been found less than 51% at fault.

Meadowlakes failed "to affirmatively plead" its alternative contention that article 16 is not applicable here based on the exception set forth in CPLR 1602 (8) with respect to a party held liable by reason of the applicability of Labor Law article 10 and thus that contention is not properly before us (*Morales*, 94 NY2d at 223; *see Cole v Mandell Food Stores*, 93 NY2d 34, 39-40 [1999]). In any event, that contention lacks merit. Home has not been held liable on any Labor Law article 10 cause of action, and it is of no moment that the judgment against Meadowlakes is predicated on that article (*see generally Chianese*, 98 NY2d at 276-278).

Lastly, Meadowlakes further contends that, even if the limitations set forth in article 16 apply with respect to its third-party action for indemnification, Home is liable for 20%, not 10%, of the judgment, because the negligence of plaintiff can be imputed to Home, his employer, for the purpose of indemnification. In support thereof, Meadowlakes cites, inter alia, *Guiga v JLS Constr. Co.* (255 AD2d 244 [1998]) and *Schaefer v RCP Assoc.* (232 AD2d 286 [1996]). Even assuming, without deciding, that Home's share of liability for indemnification can be augmented by plaintiff's share of the fault based on the doctrine of respondeat superior (*see generally Turisse v Dominick Milone, Inc.*, 262 AD2d 305, 306 [1999]), we would nevertheless decline to apply such an analysis here inasmuch as Meadowlakes has raised the issue for the first time on appeal, and the issue thus is unpreserved for our review (*see generally Ring v Jones*, 13 AD3d 1078, 1079 [2004]; *Oram v Capone*, 206 AD2d 839 [1994]).

Thus, we would modify the order and judgment by providing that the award of indemnification in favor of Meadowlakes and against Home is 10% of the amount paid by Meadowlakes. Present—Green, J.P., Hurlbutt, Kehoe, Pine and Hayes, JJ.