This opinion is uncorrected and subject to revision before publication in the New York Reports.
--------------------------------------------------------------------

No. 5
Carol Artibee et al.,
          Appellants,
        v.
Home Place Corporation,
          Respondent.

Robert H. Coughlin, Jr., for appellants.
Thomas J. Johnson, for respondent.
Frederick A. Brodie, for amicus curiae State of New York.

STEIN, J.:

This appeal presents us with the question of whether the factfinder in Supreme Court may apportion fault to the State under CPLR 1601 (1) when a plaintiff claims that both the State and a private party are liable for noneconomic losses in a personal injury action. We conclude that such apportionment is

- 1 -

not permitted and, therefore, reverse.

                                I.

        Plaintiff Carol Artibee and her spouse, derivatively,
commenced this action in Supreme Court, to recover for injuries
that plaintiff sustained while traveling on a state highway when
a large branch broke off a tree bordering the road, fell through
plaintiff's Jeep and struck her on the head.  Defendant allegedly
owns the property on which the tree was located.  The complaint
alleges that defendant was negligent in failing to inspect, trim
and remove the dead or diseased tree.  Plaintiffs also filed a
claim against the State of New York in the Court of Claims,
alleging that Department of Transportation employees were
negligent in failing to monitor open and obvious hazards along
the state highway, properly maintain the trees, or warn drivers
of the hazard.

        Defendant in this action moved for permission to
introduce evidence at trial of the State's negligence and for a
jury charge directing the apportionment of liability for
plaintiff's injuries between defendant and the State.  Plaintiff
expressed her "position that nothing bars the Supreme Court jury
from hearing evidence at trial as to the State of New York's
potential liability for [plaintiff's] injuries," but objected to
allowing the jury to apportion fault against the State.  Supreme
Court ruled that, while evidence of the State's negligence would
be admissible, the jury would not be instructed to apportion

liability between defendant and the State.  The court concluded, based on the language of CPLR 1601, that the issue before it was "whether the plaintiff's inability to join the State in the Supreme Court action, because of the doctrine of sovereign immunity, equates to the plaintiff's inability to obtain jurisdiction over a non-party thereby limiting the applicability of CPLR [a]rticle 16 apportionment."  The court determined that the language of the statute and equitable considerations required denial of defendant's request for a jury instruction regarding apportionment.

Thereafter, the court adjourned the trial to permit defendant to appeal, reasoning that it had essentially granted summary judgment dismissing defendant's claim for apportionment. The Appellate Division modified by reversing the denial of defendant's motion for a jury charge on apportionment (132 AD3d 96 [3d Dept 2015]).  In holding that defendant was entitled to have the jury consider apportionment against the State when determining defendant's fault as a joint tortfeasor, the court observed that, under CPLR 1601, "where potential tortfeasors are not joined in an action, the culpability of a nonparty tortfeasor may be imposed upon the named defendant [only] if the plaintiff can show that he or she is unable to obtain jurisdiction over the nonparty tortfeasor" (132 AD3d at 98).  The court concluded that plaintiffs here did "not face a jurisdictional limitation in impleading the State as a codefendant, but instead [could not] do

so due to the doctrine of sovereign immunity" (id.). The court then explained that, "[g]iven the statutory purpose of CPLR 1601 (1) to 'limit[] a joint tortfeasor's liability for noneconomic losses to its proportionate share, provided that it is 50% or less at fault,' . . . juries . . . should be given the option to . . . apportion fault between defendant and the State" (id. at 100, quoting Rangolan v County of Nassau, 96 NY2d 42, 46 [2001]). A dissenting Justice agreed with the majority that evidence of the State's wrongdoing is admissible, but expressed concern that, "if we permit the requested charge and ask a jury (in the context of the Supreme Court action) to apportion fault (if any) between defendant, which will be present in the courtroom and which no doubt will present a vigorous defense, and the State, which, as the 'constitutionally mandated empty chair' in the courtroom, can neither appear nor offer any defense, an unfair -- or, at the very least, skewed -- result will occur" (132 AD3d at 101 [Egan, Jr., J., dissenting]). The Third Department granted plaintiffs leave to appeal, certifying the question of whether it erred in its order of modification.

## II.

CPLR 1601 (1) "modifie[d] the common-law rule of joint and several liability by limiting a joint tortfeasor's liability in certain circumstances" (Rangolan, 96 NY2d at 46). The statute provides that, in a personal injury action involving two or more jointly-liable tortfeasors or in a claim brought against the

State in the Court of Claims, the liability for noneconomic loss of a defendant with 50% or less "of the total liability assigned to all persons liable . . . shall not exceed that defendant's equitable share determined in accordance with the relative culpability of each person causing or contributing to the total liability for non-economic loss" (CPLR 1601 [1]). In other words, under CPLR 1601, "a joint tortfeasor whose share of fault is 50% or less [is] liable for [a] plaintiff's noneconomic loss only to the extent of that tortfeasor's share of the total noneconomic loss," so that "low-fault tortfeasors are liable only for their actual assessed share of responsibility" (Chianese v Meier, 98 NY2d 270, 275 [2002]). Apportionment against a nonparty defendant is available under section 1601, unless "the claimant proves that with due diligence he or she was unable to obtain jurisdiction over" the nonparty defendant "in said action (or in a claim against the state, in a court of this state)" (CPLR 1601 [1]).

The statutory language permitting the State to seek apportionment in the Court of Claims against a private defendant if the claimant could have sued that defendant in any court of this State was specifically requested by the office of the Attorney General (see Mem of Dept of Law, Bill Jacket, L 1986, ch 682, at 14). Pursuant to that language, as long as a claimant in the Court of Claims could have commenced an action against a private tortfeasor in any court in the State of New York, then

the tortfeasor's culpable conduct can be considered by the Court

of Claims in determining the State's equitable share of the total

liability (see Siegel, NY Prac § 168C, at 290 [5th ed 2011]).

The statute does not, however, contain similar, express enabling

language to allow apportionment against the state in a Supreme

Court action (see id. [acknowledging that such a rule has derived

from case law, rather than any "statute in point"]).

Plaintiffs, along with the State,[1] argue that the

inclusion of unambiguous language permitting the Court of Claims

to consider the liability of a nonparty tortfeasor -- while, at

the same time, omitting language to allow the factfinder in

Supreme Court to consider the liability of the State --

demonstrates the Legislature's intent not to allow apportionment

of the State's liability in Supreme Court.[2]  Moreover, even apart

---

[1]   The State is not a party to this action, which originated
in Supreme Court, but it has submitted an amicus brief to protect
its interests in assuring that the procedures for litigating
claims against it are applied in a manner consistent with the
governing statutes.  The State contends that, if apportionment is
permitted against it in Supreme Court, it would be prejudiced
because the parties do not adequately represent its interests --
with defendants seeking to show the State is entirely liable, and
plaintiff simultaneously suing the State in the Court of Claims.
The State concedes that any finding of culpability against it in
Supreme Court is not binding on the Court of Claims, but notes
that, as a practical matter, Court of Claims judges are
"attentive" to the reduction of a plaintiff's Supreme Court
verdict to account for the State's supposed negligence and are
less likely under those circumstances to accept the State's
argument that it is not liable at all.

[2]   We do not ignore the meaning of the word "or" in the
statute (see dissenting op, at 2-4), but recognize that the

from the absence of language permitting apportionment against the State in Supreme Court, CPLR 1601 (1) provides that a nonparty tortfeasor's relative culpability must not be considered in apportioning fault "if the claimant . . . with due diligence . . . was unable to obtain <u>jurisdiction over such person in said action</u>" (emphasis added).  The meaning of that language is at the heart of the dispute herein.

Of course, "[t]he primary consideration of courts in interpreting a statute is to 'ascertain and give effect to the intention of the Legislature' . .. [and] the words of the statute are the best evidence of the Legislature's intent" (<u>Riley v County of Broome</u>, 95 NY2d 455, 463 [2000], quoting McKinney's Cons Laws of NY, Book 1, Statutes § 92 [a], at 177).  Inasmuch as no claimant can obtain jurisdiction over the State in Supreme Court and the statute does not, by its terms, otherwise authorize the apportionment of liability against the State in that court, we agree with plaintiff that defendant was not entitled to a jury charge on apportionment in this action.

### III.

Initially, we reject any argument that plaintiff did not face a jurisdictional limitation in impleading the State as a codefendant in this action.  Rather, the State Constitution and

---

disparate language in CPLR 1601 regarding "action[s]," on the one hand, and "claim[s] against the state," on the other, has disparate implications for private tortfeasors, as opposed to state tortfeasors.

our case law both indicate that the restriction on Supreme Court
imposed by the doctrine of sovereign immunity is jurisdictional
in nature.  Specifically, we have explained that the New York
Constitution, article VI, § 9, which "preserv[es] the State's
historical sovereign immunity from suit," is a constitutional
limitation on "the jurisdiction of Supreme Court" (People v
Correa, 15 NY3d 213, 227 [2010] [emphasis added]; see Siegel, NY
Prac § 12, at 16 [5th ed 2011] [noting that "[t]here are two
broad categories of original jurisdiction that . . . [S]upreme
[C]ourt lacks:  cases of which exclusive jurisdiction has been
conferred by Congress on the federal courts, and actions against
the state, where jurisdiction is conferred exclusively on the
[C]ourt of [C]laims"]).  Article VI, § 9 states that the Court of
Claims "shall have jurisdiction to hear and determine claims
against the state or by the state against the claimant or between
conflicting claimants as the legislature may provide."  As this
Court stated in Correa, "claims for money damages brought against
the State . . . must be initiated and tried in the Court of
Claims" and, thus, "Supreme Court cannot exercise jurisdiction
over [such] claims" (15 NY3d at 227-228 [emphasis added]) -- that
is, article VI, § 9 limits the jurisdiction of Supreme Court.[3]

_____

    [3] Although this Court previously concluded in People ex rel.
Swift v Luce (204 NY 478 [1912]) that the doctrine of sovereign
immunity and the exclusive jurisdiction of the Court of Claims
did not amount to limitations on the jurisdiction of Supreme
Court, Swift was decided prior to the amendment to the New York
Constitution, effective January 1950, that created the Court of

Because it concluded in this case that there is no jurisdictional bar against suing the State in Supreme Court, the Appellate Division did not consider defendant's argument that the word "jurisdiction" in the statute refers to personal jurisdiction, as opposed to subject matter jurisdiction. To be sure, defendant's argument finds support in various commentaries and lower court cases (see Brown v State of New York, 268 AD2d 548, 549 [2d Dept 2000]; Duffy v County of Chautauqua, 225 AD2d 261, 267 [4th Dept 1996], lv dismissed in part & denied in part 89 NY2d 980 [1997]; Rezucha v Garlock Mech. Packing Co., 159 Misc 2d 855, 860 [Sup Ct, Broome County 1993]; Siegel, NY Prac § 168C, at 290 [5th ed 2011]; Vincent C. Alexander, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B CPLR C 1601:3). The argument is not, however, supported by the language of the statute, its legislative history, or its purpose.

---

Claims as a constitutional court of record (see Easley v New York State Thruway Auth., 1 NY2d 374, 377 [1956]). At the time Swift was decided, the "Court of Claims" was "only an auditing board and a quasi-judicial body" (Swift, 204 NY at 486) -- i.e., it "was one of a series of boards and tribunals set up successively by various legislative acts to hear and audit various kinds of claims against the state" (Easley, 1 NY2d at 377). Inasmuch as legislative acts cannot deprive Supreme Court "of one particle of its jurisdiction" (People v Correa, 15 NY3d 213, 229 [2010] [internal quotation marks and citation omitted]), Swift was correct at the time it was decided. However, as indicated above, we have recognized, following the 1950 amendment of the State Constitution, that the exclusive jurisdiction of the Court of Claims is a constitutional limitation on the jurisdiction of Supreme Court (see id. at 227-228).

IV.

This Court has observed that "[j]urisdiction is a word of elastic, diverse, and disparate meanings" (Lacks v Lacks, 41 NY2d 71, 74 [1976]). It can refer to both subject matter jurisdiction, relating to "a court's competence to entertain an action," as well as to the court's "power to render a judgment on the merits," which does not relate to subject matter jurisdiction (id. at 75). "[T]he rationale for the jurisdictional restriction [in CPLR 1601] is that if a diligent claimant were able to sue all tortfeasors but neglected to do so, then it would not be unfair for the culpability of a nonparty to be considered even though the claimant's recovery might not be as complete as that provided by the common-law rule of joint and several liability" (Rezucha, 159 Misc 2d at 860). As a practical matter, it makes no difference to the parties what type of jurisdiction is absent -- regardless of whether a defendant is not subject to long-arm jurisdiction or Supreme Court lacks subject matter jurisdiction, the "claimant [cannot] with due diligence . . . obtain jurisdiction over such person in said action" (CPLR 1601 [1]).[4]

---

[4] We do not overlook the context in which the term "jurisdiction" is used, or the phrases "with due diligence" and "over such person" (see dissenting op, at 6-8). Rather, we recognize that the "due diligence" requirement leads to the same result regardless of whether subject matter jurisdiction is lacking or long-arm (i.e., personal) jurisdiction is lacking -- the claimant will not be able to obtain jurisdiction in either instance. Furthermore, when the term "jurisdiction" is used in reference to the State in the context of a personal injury action -- the type of action to which CPLR 1601 applies -- subject

To read the word "personal" into the statute, as dissenters and defendant would have us do, results in an interpretation broader than that required by the statutory language itself, which simply uses "the catchall word 'jurisdiction'" (Lacks, 41 NY2d at 75).  Because CPLR 1601 is a statute in derogation of the common law, it must be strictly construed (see e.g. Matter of New York City Asbestos Litig., 24 NY3d 275, 281 [2014]; McKinney's Cons Laws of NY, Book 1, Statutes § 301, Comment).  By its terms, the statute does not specify that the inability to obtain jurisdiction must have a particular cause.  "If the legislature intended that the term ['jurisdiction'] mean only 'personal jurisdiction,' it could have easily done so with the addition of that one word to the statute" (Siegel & Connors, NY Prac § 168C, January 2017 Supplement, at 118; see Matter of Theroux v Reilly, 1 NY3d 232, 240 [2003]).

Moreover, interpreting the word "jurisdiction" as limited to "personal jurisdiction" effectively renders meaningless the phrase "in said action []or in a claim against

_____

matter jurisdiction, not personal jurisdiction, is the primary consideration.  The statutory language directs us to consider whether a claimant is able "with due diligence  . . to obtain jurisdiction over such person" in Supreme Court.  When the "person" is the State, the relevant question is whether Supreme Court has subject matter jurisdiction.  While Supreme Court generally has subject matter jurisdiction over personal injury actions, it lacks such subject matter jurisdiction when the defendant is the State, as explained above (see Correa, 15 NY3d at 227-228).  Thus, there is, indeed, a "reason for the legislature to be concerned with subject matter jurisdiction in the context of a personal injury action" (dissenting op, at 7).

the state" in CPLR 1601 (1).  "[T]he inclusion of the [phrase] . . . is a strong indication that the term 'jurisdiction' encompasses both subject matter and personal jurisdiction" (Siegel & Connors, NY Prac § 168C, January 2017 Supplement, at 118).  On the other hand, if that phrase were eliminated, the statute would prohibit apportionment only "if the claimant prove[d] that with due diligence he or she was unable to obtain jurisdiction over such person . . . in a court of this state" (CPLR 1601 [1] [as modified to accommodate defendant's argument]).  Thus, if the statute had been so drafted, apportionment would be unauthorized only if the claimant proved that personal jurisdiction could not be obtained because the defendant "is not a domiciliary of New York and no basis for extraterritorial (i.e., longarm) jurisdiction is available against [the defendant]" (Siegel, NY Prac § 168C, at 290 [5th ed 2011]).  Inasmuch as a claimant can obtain jurisdiction over the State in a court of this State -- the Court of Claims -- apportionment against the State in Supreme Court would be permitted.  However, judicially excising language to reach the result that defendant urges would contravene the "'accepted rule that all parts of a statute are intended to be given effect and that a statutory construction which renders one part meaningless should be avoided'" (Matter of Springer v Board of Educ. of the City Sch. Dist. of the City of N.Y., 27 NY3d 102, 107 [2016], quoting Rocovich v Consolidated Edison Co., 78 NY2d 509, 515

[1991]).[5]

                              V.

     Our reading of CPLR 1601 (1) further accords with the
legislative history and objective of the statute.  The
legislative history is largely silent on the meaning of the word
"jurisdiction" in CPLR 1601 (1), although the Governor's Approval
Memorandum states that a defendant "will not be able to reduce
his or her share by any amount for which a third party is
responsible if jurisdiction cannot be obtained over such party"
(Governor's Mem approving L 1986, ch 682, 1986 McKinney's Session
Laws of NY, at 3183; see Mem of Dept of Law, Bill Jacket, L 1986,

_____

     [5] There is no merit to defendant's argument that
interpreting jurisdiction to mean "subject matter jurisdiction"
would bar apportionment against tortfeasors who are absent from
the plaintiff's action in Supreme Court due to the exclusivity
provisions of the Workers' Compensation Law, thereby rendering
meaningless the second proviso of section 1601 (1) or section
1602 (4).  Defendant's argument is based upon its assumption that
Supreme Court lacks subject matter jurisdiction over actions
against employers whose employees have received workers'
compensation benefits.  However, "[w]ork[ers]' compensation is an
exclusive remedy as a matter of substantive law . . ., it is not
the kind of subject-matter jurisdiction deficiency which ousts a
court of competence to decide the case" (Murray v City of New
York, 43 NY2d 400, 407 [1977]).  In any event, third-party
contribution claims can be brought by a defendant/third-party
plaintiff against an employer/third-party defendant when, among
other things, the plaintiff has suffered a grave injury; such
claims may be resolved in the same trial as the employee-
plaintiff's direct claims against the defendant, even though a
direct action by the plaintiff against the employer is barred by
the exclusivity provisions (see Workers' Compensation Law § 11;
see generally Dole v Dow Chem. Co., 30 NY2d 143, 152-153 [1972]).
In such a scenario, there would be a "claimant" within the
meaning of CPLR 1601 (1) (the defendant/third-party plaintiff)
who can "obtain jurisdiction over" the employer.

ch 682, at 12).  Again, "the catchall word 'jurisdiction'"
(Lacks, 41 NY2d at 75) is used in the Memoranda of the Governor
and Department of Law, with no indication that only personal
jurisdiction was considered.

The Legislative history does, however, more clearly
confirm that the statute reflects "careful deliberations over the
appropriate situations for a modified joint and several liability
rule" (Governor's Mem approving L 1986, ch 682, 1986 McKinney's
Session Laws of NY, at 3184; see Chianese, 98 NY2d at 275;
Rangolan, 96 NY2d at 49; Morales v County of Nassau, 94 NY2d 218,
224-225 [1999]).  This Court has recognized that the statute "was
the product of a painstaking balance of interests . . .
includ[ing], among many others, the burdens to be imposed on
innocent plaintiffs as well as a concern that defendants at fault
to a small degree were consistently paying a disproportionate
share of damages awards, adversely affecting the availability and
affordability of liability insurance" (Morales, 94 NY2d at 225).
Given the assiduous balancing of interests that went into this
statute -- including the provision permitting apportionment in
the Court of Claims to benefit the State, at the State's request
(see Mem of Dept of Law, Bill Jacket, L 1986, ch 682, at 14)[6] --

_____

[6] Defendant argues -- and the dissent agrees -- that,
because the Department of Law's Memorandum referred to this
provision as a "technical change[] . . . made to ensure that the
State can take advantage of the modifications in joint and
several liability" (Mem of Dept of Law, Bill Jacket, L 1986, ch
682, at 14), the State should be viewed merely as being on the

we decline to recognize the availability of apportionment where the statute does not expressly permit it.

The legislative history further confirms that a strict construction of the statute is consistent with the Legislature's purpose in enacting it. While the statute was intended to "'remedy the inequities created by joint and several liability on low-fault, deep pocket defendants'" (Chianese, 98 NY2d at 275, quoting Rangolan, 96 NY2d at 46), the driving purpose behind that intent was to alleviate a liability insurance crisis (see Morales, 94 NY2d at 225; Mem of Dept of Law, Bill Jacket, L 1986, ch 682, at 13-14). The modifications to joint and several liability arose out of the recommendations of the Governor's Advisory Commission, chaired by former Court of Appeals Judge Hugh R. Jones (see Governor's Mem approving L 1986, ch 682, 1986 McKinney's Session Laws of NY, at 3183-3184; see also Rangolan, 96 NY2d at 46).

The Commission opined that amendment of the common-law

---

same footing as other defendants to which the statute applies, rather than enjoying any special status. Defendant and the dissenters note that the Memorandum does not reference any request for special status for the State pursuant to which apportionment would not be allowed in Supreme Court. However, the absence of any such request can be explained by the fact that no further request would be necessary to ensure that the State enjoys a "special status." The language of the statute, on its face, prohibits apportionment against the State in Supreme Court because a claimant cannot "obtain jurisdiction" over the State in that court. The lack of jurisdiction, which gives the State its "special status" under the statute, is simply a function of sovereign immunity.

joint and several liability rule -- which developed in the contributory negligence regime -- had become necessary as a result of New York's 1975 replacement of the rule of contributory negligence with the comparative fault concept (see Insuring Our Future, Report of Governor's Advisory Commission on Liability Insurance, at 130 [Apr. 7, 1986]).  "[T]he expansions of liability created by [the] contemporary doctrine . . . create[d] insurance prices that [were] greater than even institutional insureds [could] bear" (id. at 125), but the courts were "blind . . . to the health of the risk-spreading mechanism that American society . . . developed to assure that compensation is in fact available for those who are entitled to receive it" (id. at 127-128).  The Commission noted that "the ends of justice are subverted when insurance is unavailable at an affordable price" (id. at 128), and concluded that the switch from contributory negligence to comparative fault rules exacerbated the problem by removing the disincentive for plaintiffs to sue "defendants whose minor degrees of fault might dramatize the fact that the plaintiff's fault was at least as great" (id. at 130).  That led to defendants who were "adjudged to have a small percentage share of fault, but wound up paying all . . . of a large money judgment because no reimbursement was forthcoming from co-defendants" (id. at 130-131).  The right of contribution under the old joint and several liability rule was "cold comfort" to deep-pocket defendants and their insurers "when the other tortfeasors [were]

insolvent or nearly so" (Alexander, Practice Commentaries,
McKinney's Cons Laws of NY, Book 7B, CPLR C1601:1).

The State, however, is not insolvent and, if a
defendant believes that it has been held liable in Supreme Court
for what is actually the State's negligent conduct, the defendant
can sue the State for contribution in the Court of Claims (see
Bay Ridge Air Rights v State of New York, 44 NY2d 49, 54 [1978]).
Indeed, a strict construction of the statute does not deprive a
tortfeasor of the opportunity to prove that it is a low-liability
defendant because it may do so in the Court of Claims.  In that
regard, even defendant acknowledges that the risk of potential
prejudice to such a defendant with an absent bankrupt tortfeasor
-- who is subject to apportionment in Supreme Court -- is far
greater than the risk present when the State is the alleged joint
tortfeasor because "[t]he State will always have sufficient
resources to satisfy whatever judgment" is obtained against it.
True, our interpretation of the statute places on defendants,
rather than "on innocent plaintiffs" (Morales, 94 NY2d at 225),
the burden of having to seek recovery against the State in the
Court of Claims.[7]  However, that burden is not nearly of the same

_____

     [7]  Where, as here, the plaintiff is also suing the State in
the Court of Claims, our interpretation of the statute as placing
the burden on a private defendant to seek contribution from the
State following an adverse verdict in Supreme Court facilitates
the achievement of a fair result for both plaintiffs and
defendants because it provides an incentive for all parties --
including both private and state tortfeasors -- to appear in, and
develop a full record before, a single court.

order of magnitude as the burden that CPLR 1601 was intended to remedy -- forcing deep pocket defendants to pursue contribution from insolvent tortfeasors who were assessed a much greater portion of liability.  Given that a strict construction of the statute does not "result in the very inequity the Legislature sought to eliminate" (Chianese, 98 NY2d at 278) and, in fact, promotes equity, we apply the statute as it is written. Plaintiff's remaining arguments are unpreserved.

Accordingly, the order of the Appellate Division should be modified, without costs, by denying the motion of defendant Home Place Corporation insofar as it sought a jury charge on apportionment of liability of the State of New York pursuant to CPLR 1601 and, as so modified, affirmed, and the certified question answered in the affirmative.

Artibee v Home Place

No. 5

ABDUS-SALAAM, J.(dissenting):

The majority's interpretation of CPLR 1601 is a strained reading of the statutory language and contravenes the legislative goal of limiting the liability of any and all tortfeasors who are responsible for 50% or less of the total liability. The majority's analysis gives the State a preferred status over other tortfeasors, despite no indication that the legislature intended such a result, and notwithstanding that the plain reading of the text indicates the legislature simply wanted to create parallel rights of apportionment for state tortfeasors and non-state tortfeasors. Furthermore, the majority's holding creates anomalous situations that I do not believe were intended by the legislature: 1) a defendant in Supreme Court cannot shift liability to the non-party State, but a State defendant in the Court of Claims can shift liability to a private party; and 2) a plaintiff in the Court of Claims will face apportionment with the State pointing to an empty chair, but a plaintiff in the Supreme Court will not face apportionment where the empty chair is the

State.  Accordingly, I respectfully dissent, and would affirm the Appellate Division's order.

CPLR article 16 was promulgated as a modification of the common-law theory of joint and several liability, the purpose of which was "to remedy the inequities created by joint and several liability on low-fault, 'deep pocket' defendants" (Rangolan v County of Nassau, 96 NY2d 42, 46 [2001]).  As we noted in Rangolan, the statute was especially intended to benefit governmental entities such as municipalities (e.g., the defendant State, in plaintiffs' Court of Claims action) and landowners (e.g., the defendant Home Place, in plaintiffs' Supreme Court action)(see Rangolan at 48, citing the report issued by the Governor's Advisory Commission on Liability Insurance, chaired by former Court of Appeals Judge Hugh R. Jones, referenced in the majority opinion at 15).

In resolving this appeal, we are guided by the established principle that "the statutory text is the clearest indicator of legislative purpose" (Matter of M.B., 6 NY3d 437, 447 [2006]).  In my view, the majority's analysis of the text, while appropriately focused on the word "jurisdiction," ignores the meaning of the word "or," and fails to adequately weigh the significance of the phrases "due diligence" and "over such person."

The first general provision of CPLR 1601 states: "Notwithstanding any other provision of law, when a verdict or a

decision in an action or claim for personal injury is determined in favor of a claimant in an action involving two or more tortfeasors jointly liable <u>or</u> in a claim against the State and the liability of a defendant is found to be fifty percent or less of the total liability assigned to all persons liable, the liability of such defendant to the claimant for non-economic loss shall not exceed the defendant's equitable share determined in accordance with the relative culpability of each person causing or contributing to the total liability for non-economic loss" (emphasis added).

The general provision, by its use of the term "or" in referring to an action involving two or more tortfeasors jointly liable *or* in a claim against the State, indicates that the legislature intended to address alternative situations (<u>see</u> Statutes, § 235, Comment ["Use of the conjunction 'or' in a statute usually indicates that the language is to be construed in an alternative sense;" <u>see</u> <u>also</u> <u>McSweeney v Bazinet</u>, 269 AD 213, 216 [3rd Dept 1945], <u>affd</u> 295 NY 797 [1946]; Merriam-Webster's New Collegiate Dictionary [9th ed 1986]["or" is "used as a function word to indicate an alternative <coffee or tea> <sink or swim>, the equivalent or substitutive character of two words or phrases"]).  Thus, the general provision applies alternatively -- equivalently, to state tortfeasors or non-state tortfeasors.  In other words, whether in Supreme Court or the Court of Claims, in a personal injury action involving jointly liable tortfeasors,

where the liability of a tortfeasor is found to be fifty percent or less of the total liability, that tortfeasor's monetary share of the damages may not be greater than the share of liability assigned to that tortfeasor.

The statute's application to either state tortfeasors or non-state tortfeasors is again addressed in the first proviso, which states: "provided, however that the culpable conduct of any person not a party to the action shall not be considered in determining any equitable share herein if the claimant proves that with due diligence he or she was unable to obtain jurisdiction over such person in said action (or in a claim against the state, in a court of this state)" (CPLR 1601). Again, the use of the word "or," which the majority does not address, demonstrates that the legislature was indicating alternative, equivalent situations -- non-state tortfeasors as well as state tortfeasors.  The parenthetical language was a technical change, "made to ensure that the State can take advantage of the modifications in joint and several liability contained in the statute" (Mem of Dept of Law, Bill Jacket, L 1986, ch 682, at 14).  There is no indication in the legislative history that the legislature intended that the State be given special status under CPLR 1601.  The State has waived its sovereign immunity and an action seeking damages for personal injury may be commenced against the State in the Court of Claims (see Court of Claims Act § 8).

Furthermore, if the legislature had actually wanted to preclude a private tortfeasor from seeking apportionment against the State in Supreme Court, in contravention of the overall purpose of CPLR 1601 which is to limit the liability of low-fault tortfeasors to only their actual share of responsibility (see Chianese v Meier, 98 NY2d 270, 275 [2002]), it could have simply specified that a joint tortfeasor cannot seek apportionment against the State.  It is unlikely that the legislature would carve out such an important exclusion without express language indicating its intent.  Yet, the majority concludes that the apportionment rule, vis-à-vis state tortfeasors, is the polar opposite in Supreme Court than it is in the Court of Claims.

The majority points out that the statute "was the product of a painstaking balance of interests . . . includ[ing] among others, the burden to be imposed on innocent plaintiffs" (majority op, at 13, 16, quoting from Morales v County of Nassau, 94 NY2d 218, 224-224 [1999]).  But the majority does not explain why the legislature would treat "innocent plaintiffs" less favorably in the Court of Claims than in Supreme Court.  And yet, that is a consequence of the majority opinion, because it exposes a plaintiff in the Court of Claims to apportionment,[1] but does not similarly disadvantage a plaintiff in Supreme Court when the non-party tortfeasor is the State.  The legislature has evinced

---

[1] As noted in the majority opinion, any apportionment determination in one court is not binding on the other court (majority op, at 6, n 1).

no intention of exposing plaintiffs suing the State in the Court of Claims to the apportionment of damages, while permitting plaintiffs in Supreme Court to escape that outcome.[2]

Furthermore, while the majority correctly recognizes that "jurisdiction" "is a word of elastic diverse and disparate meanings" (majority op, at 9-10, quoting Lacks v Lacks, 41 NY2d 71, 74 [1976]], the majority veers off course when it applies the broadest possible interpretation of that term, without giving due weight to the context in which it is used.  I do not quarrel with the majority's point that in CPLR 1601, the legislature did not expressly specify whether it was referring to personal or subject matter jurisdiction.  However, I disagree with the conclusion that because the legislature did not so specify, it must have been referring to either personal or subject matter jurisdiction. The statute's requirement that the plaintiff exercise due diligence to obtain jurisdiction over a tortfeasor cannot possibly refer to *a court's subject matter jurisdiction*, where the plaintiff's due diligence has no bearing because a plaintiff can do nothing to affect a court's subject matter jurisdiction over the parties' claims.  Instead, the phrase "due diligence"

---

[2] I acknowledge that because a plaintiff cannot commence a personal injury action against a private tortfeasor in the Court of Claims, and cannot bring a personal injury action against the State in Supreme Court, the empty chair element of apportionment can result in an outcome that does not fully compensate a plaintiff. However, that is fundamentally rooted in the division of our court system, and not in this statute.

only makes sense in relation to personal jurisdiction, where a plaintiff may or may not exercise due diligence (see generally CPLR 308).  Similarly, the phrase "over such person" makes sense when "jurisdiction" is read as "personal jurisdiction," as the phrase is meaningless in the context of subject matter jurisdiction, which refers to the authority of a court to hear particular claims.  Hence, the reference to jurisdiction in the statute logically refers only to personal jurisdiction.

Moreover, that the legislature did not specify personal or subject matter jurisdiction cannot simply be discounted as imprecise drafting.  The Supreme Court always has subject matter jurisdiction over personal injury actions (other than those interposed against the State), although it might not always have personal jurisdiction.  There would be no reason for the legislature to be concerned with subject matter jurisdiction in the context of a personal injury action, such as this case.  Consequently, in enacting CPLR 1601, the legislature must have sought to address situations in which a party cannot obtain jurisdiction "over such person."

As noted by the majority, the conclusion reached by most courts and legal scholars that have considered the meaning of the term "jurisdiction" in the context of this statute is that personal jurisdiction, not subject matter jurisdiction, is the focus of the statute (see majority op, at 9).  In reaching the opposite conclusion, the majority's analysis ignores the context

in which the term is used, and the descriptive phrases of "due diligence," and "over such person," which clearly only apply to personal jurisdiction.

In sum, given the purpose of CPLR 1601, which is to limit the liability of "low-fault, 'deep pocket' defendants" (Rangolan at 46 [2001]), there is no reason why the State should be permitted to demonstrate the culpability of non-parties in the Court of Claims but defendants in Supreme Court should not have the parallel right to demonstrate the State's culpability. Contrary to the majority's conclusion, the language of the statute does not require this disparate treatment of state tortfeasors and private tortfeasors, but instead, calls for comparable treatment. The majority's construction of the statute does not promote equity (see majority op, at 17); it promotes inequity, by elevating the rights of plaintiffs in Supreme Court over those of plaintiffs in the Court of Claims, and the rights of state tortfeasors in the Court of Claims over those of private tortfeasors in Supreme Court.

*   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *

Order modified, without costs, by denying the motion of defendant Home Place Corporation insofar as it sought a jury charge on apportionment of liability of the State of New York pursuant to CPLR 1601, and, as so modified, affirmed, and certified question answered in the affirmative. Opinion by Judge Stein. Chief Judge DiFiore and Judges Fahey and Garcia concur. Judge Abdus-Salaam dissents and votes to affirm in an opinion in which Judge Rivera concurs. Judge Wilson took no part.

Decided February 14, 2017